The taxing power of this State does not extend to stocks issued by the Government of the United States. This proposition, in its broadest sense, was determined by the Supreme Court of the United States in the case of Weston et al. v. The City Council ofCharleston (2 Pet., 449). In that case the corporation of the city of Charleston, deriving its powers from the State of South Carolina, had passed an ordinance subjecting personal estate within the city to taxation, and enumerating in the list of things to be taxed six and seven per cent stocks of the National Government. The plaintiffs, being the owners of such stocks, applied to the Court of Common Pleas for the Charleston District, for a writ of prohibition to restrain the city council from levying the tax on those stocks; on the ground that the ordinance was, in that respect, contrary to the Constitution of the United States. The prohibition was granted. The proceeding was brought *Page 210 
into the highest State court for review, where the decision of the Common Pleas was reversed, and a decision was made that the ordinance was constitutional and valid. From that decision the plaintiffs brought error into the Supreme Court of the United States. In that court a preliminary question arose whether the judgment of the State Court was reviewable under the judiciary act of Congress. That question was decided in the affirmative; and then the only point to be determined was whether, by force of the Federal Constitution, the stocks of the Government were exempt from taxation in the States, and in the cities of the States. After a very elaborate argument, Chief Justice MARSHALL delivered the opinion of the court, holding that the ordinance of the city of Charleston was unconstitutional, so far as it subjected such stocks to taxation. The judgment of the State Court was accordingly reversed, and a judgment was directed to be entered declaring it to be the opinion of the court that the ordinance was repugnant to the Constitution and void.
This decision was pronounced by the high tribunal appointed by the Constitution itself to be the interpreter of its provisions. It has never been departed from, and, I think, never questioned in the slightest degree. It would therefore be entirely inappropriate for us to suggest the reasons by which the conclusion is supported. It would be, moreover, a work of supererogation, because the opinion of Chief Justice MARSHALL is not only convincing, but it leaves nothing to be added. It should be observed, however, in reference to what has been said in the present case, that the decision proceeded on the broadest possible ground. No suggestion was made in the reasoning of the court that the Government stocks had been invidiously selected for taxation with any purpose hostile to the Government or laws of the Federal Union. They had been assessed as the personal estate of individuals, and like other personal estates; and the simple and sole inquiry was, whether any power resided in the States, or in municipal bodies created under State authority, to tax them. This was determined in the negative, and we are bound by the decision. Upon all *Page 211 
questions of conflict between the Constitution and laws of the Union and the constitutions and laws of the States there can, in the very nature of our political system, be but one rule of decision, and that rule must be declared in the last resort by the Supreme Court of the United States. In the consideration, therefore, of the question now before us, we must proceed on the fundamental assumption that stocks of the United States Government are absolutely exempt from taxation by any power in this State.
According to the assessment laws of this State, property is not taxed by enumeration or specification. All real and personal estate within the State is liable to taxation, with certain exemptions. (1 R.S., 387, § 1.) The local law or ordinance of the City of Charleston, adjudged to be void in the case which has been cited, enumerated the different species or kinds of property upon which revenue was intended to be raised, including the government stocks in the specification, the prescribed rate of taxation, however, being uniform. If in the case now before us, the exemption were claimed by an individual instead of a corporation, and if our law made no exception in favor of property exempt under the Constitution of the United States, the difference in circumstance between the case and the one determined by the Federal Supreme Court would be simply that which exists between taxation of all property without exception and taxation of certain classes, by a specification which includes property exempt under the Constitution of the United States. The taxing power of a State may be exerted in either of these modes as to all property which can be taxed. In the latter mode it cannot be exerted so as to embrace stocks issued by the United States, because the attempt to exert it is in violation of the Constitution. The fundamental question in this case, I think, is whether that description of property can be and ought to be embraced in assessing, according to the other mode, the personal estate of an individual or a corporation. I am satisfied for reasons to be presently given, that no distinction in this respect can be made between an individual and a corporation. *Page 212 
It cannot be denied that State power might be exercised more inconveniently, not to say more dangerously, to the Federal Government in one of these modes, than in the other. In the one, the power might be used so as to exempt the mass of property belonging to the citizens of a State or municipality, and so as to cast the burden of State expenditure upon the credit of the Union. In the other, taxation is necessarily uniform upon all property, and flagrant abuse of power is perhaps impossible. Nevertheless, it seems to me, the question does not depend upon these considerations. As to all subjects over which the taxing power of a State extends, there are no limitations depending on the mode of its exercise. Discrimination between different kinds of property may be made in the pleasure of the legislature, where the right of taxation exists at all. Every holder of United States Government stock is a creditor of the government, and the value of all such stocks is more or less dependent on their exemption from burdens imposed by the States. If we admit the right, to tax this credit in any mode and to any extent, we must admit it in a different mode and to a greater extent. There is no limit to the principle. The acknowledgment of the right in any degree, involves a conflict between the Federal Union and the parts of which it is composed. But as the Union is supreme in the exercise of all its powers, including the vital one of borrowing money, no authority can be constitutionally opposed to it while confined to the exercise of those powers. This is a principle which demands the absolute exemption of the national credit from State taxation. Such, I understand to be the doctrine of the Supreme Court of the United States, and as such we are to accept it.
This would be my conclusion if the State of New York had, by its legislation, attempted to subject this class of property to taxation. But I am satisfied that no such attempt has been made. By our statute all lands and all personal estates within this State are made liable to taxation, subject to certain exemptions. (1 R.S., 387, § 1.) The first of those exemptions is of "all property, real or personal, exempted from taxation *Page 213 
by the Constitution of this State, or under the Constitution of the United States." (§ 4.) The force of this exemption should be carefully considered. We have seen that these public stocks cannot be assessed in the mode of enumeration or specification; all such attempts being repugnant to the Constitution of the United States. Now if the exemption declared by the statute, in the words just quoted, could be understood as referring to that particular mode of assessment, they most clearly would not of themselves prohibit the administrative or taxing officers from rating an individual in a sum equal to the value of all his personal estate without any deduction for government stock which he might own. On that supposition, the only question would be one of power in the State Government, which has been considered. But the words of the statute can have no such reference, and admit of no such interpretation; because there is no such mode of assessment in this State. Our laws of assessment contain no specification of the subjects of taxation. They provide for a valuation of the estate of the taxpayer in mass, of whatsoever it may consist, and consequently if he owns anything which is exempted by law, its value must be deducted from the value of the mass. It is the same thing as to say that property not exempt, and no other, is to be valued and taxed. Every exception contained in the statute of things from taxation, and there is a considerable number of them, necessarily refers to the actual system of taxation in the mass, for we have no other; and all such exceptions are to be interpreted accordingly. The conclusion is plain. The Constitution of the United States, according to its true interpretation, exempts the national credit from taxation by State power, and the prohibition has the same force and effect as if it were declared in express words. The legislature of this State, in providing for taxation of personal estate of its citizens in the mass and according to value, has expressly excepted whatsoever is exempt under and according to the Federal Constitution. Putting aside then the question of power, whether it would be possible to evade the Constitution by that mode of assessment, the legislature have declared, in a *Page 214 
manner too plain to be mistaken, that no such evasion is intended. They have provided for aggregate or gross valuations of property, excepting therefrom such things as are exempt, and they have declared in general or particular terms what those things are. It is a necessary result that those things are to be omitted in such valuation.
This conclusion may, perhaps, be rendered still more evident, if we observe that the national Constitution exempts nothing from taxation by any express words of that instrument. Our legislature, therefore, in making the exception of which we are speaking, refer to property which is exempted not by any express language, but "under," or according to the Constitution; and there is no room to doubt that they had in view the very class of property now in question, because at that time, the Constitution had been interpreted in this respect, and the right of exemption ascertained and declared by the judicial power of the Federal Government.
In order to be fully understood on this point, I observe once more: The credit of the United States Government is admitted to be exempt from taxation in the States; but the suggestion is made that this applies only to taxation eo nomine, or by enumeration and specification of the thing itself, a suggestion which leaves the States at liberty to rate their citizens according to the value of their property in mass, and without any deduction of that, which is thus exempt. Our own legislation is fatal to this argument, because under our statutes all taxation is according to this mode; and those very statutes declare that whatever is exempt under the national Constitution, shall not be included in the valuation. The exemption, therefore, of the stocks of the United States Government, rests not only upon the want of power in the State, but upon the intention of its legislature.
I come now to a supposed distinction unfavorable to corporations, in this State, which may own the kind of property now in question. The very able and discriminating counsel who has argued this case for the respondents, has relied mainly on that distinction. Feeling, I presume, the force of the considerations *Page 215 
which have been urged, he has scarcely denied that if Government stocks, owned by an individual, had been included in an assessment against him, a correction of the roll could be rightfully demanded; but he has insisted that no such correction can be claimed by a corporation. This result is claimed to flow from the manner in which our assessment rolls are made up, and corporations are rated under our statutes.
For myself, I feel very little difficulty in this branch of the case. In the first place, if it has been shown that stocks of the United States Government cannot be subjected to taxation, when owned by an individual, the rule is manifestly the same when they are held by a corporation. The rule is the exemption of the thing or subject, and it has no respect to the ownership. There is not one interpretation of the Federal Constitution when an individual claims exemption under it, and another, when a corporation makes the same claim. The suggestion has been made, that the legislature may tax corporations in any mode, and to any extent, as the price of the privileges and franchises conferred in their charters. This is true, as to all subjects to which the taxing power of the State extends. But when a corporation acquires property which is absolutely exempt from all burdens imposed by the States, under the higher authority of the Constitution of the United States, by inevitable logic such property is acquired and held free from taxation. In this State, all taxation is upon property. It is the same thing in substance to say that it is upon the owner in respect to property. If the holder of Government stocks is charged because he buys and owns them as a part of his wealth, to the extent of such charge their value in market is depreciated and the credit of the Nation is taxed, and it becomes perfectly indifferent whether a natural or an artificial person is the proprietor. The exemption, if it exists at all, is the result of a constitutional principle which operates in all circumstances, and follows the property wherever it goes. So, too, the law of this State is of universal application. The language of the statute is that "all lands and all personal estate within this State, whether owned by individuals or corporations, *Page 216 
shall be liable to taxation," subject to certain exemptions afterwards specified; and among those exemptions as we have seen, is the one which includes stocks of the United States. If this language does not apply the same rule of taxation and exemption both to individuals and corporations, I greatly misapprehend its meaning.
The subject is, however, perhaps somewhat obscured by the statutes which regulate the mode and details of assessing corporations. By the Revised Statutes, the assessors are directed to enter upon the rolls the names of corporations, and under each name the amount of capital stock paid in and secured to be paid. The quantity and value of real estate are to be entered in the second and third columns. In the fourth column, they are directed to insert the amount of capital stock paid in, and secured to be paid in, deducting the sums invested in the real estate, and the amount of the stock held by the State, or by literary and charitable institutions. (1 R.S., p. 415, § 6.) In the fifth column, of what is called the corrected assessment roll, the actual amount of the tax imposed is to be extended (id., § 15), but how that amount was to be determined, that is to say whether by the real or nominal amount of capital, was not expressly directed in the Revised Statutes. In 1853 those statutes were so amended as to bring within the influence of taxation the surplus profits or reserved funds of corporations, exceeding ten per cent of their capital stock, and, also, so as to authorize a commutation of taxes in the case and manner particularly set forth. (Laws of 1853, ch. 654, p. 1240.) In 1857 an act was passed which, after repealing in the first section all antecedent statutes which authorized a commutation of taxes, and amending in the second section the previous provision as to the fifth column of the assessment roll, proceeds in the third section to declare, that "the capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll, or as shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent of its capital after deducting the assessed value of its real estate, and all shares of stock in other *Page 217 
corporations actually owned by such company which are taxable upon their capital stock under the laws of this State, shall be assessed at its actual value, and taxed in the same manner as other real and personal estate in the county." It is said that prior to this act of 1857, corporations were to be taxed according to the nominal and not the real value of their capital or stock; and this it is supposed, in some degree, favors the views of the respondents in this case. The argument, if I understand it, is, that according to this rule of taxation, the assessors or tax commissioners were to consider nothing but the sum of the capital subscribed and paid or secured (until surplus profits were included in 1853), and could not inquire as to the things in which the capital was invested, so as to ascertain the real value of the corporate estate, or whether any part of it was exempted from taxation.
It appears to me that this argument is plainly fallacious. The Code of taxation in the Revised Statutes begins with declaring the real and personal estate both of individuals and corporations to be liable to taxation, subject to certain exemptions, and it then declares the exemptions applicable alike to both. In the subsequent titles, the mode and details of assessment are considered and provided for, while the exemptions are not again referred to. But these must be understood as qualifying the entire Code. Thus, in the case of individuals, the mode of making up the assessment rolls is prescribed, and it is directed that "the full value of all personal estate" shall be entered in the fourth column. (1 R.S., 391, § 9.) Moreover, in a fifth column, the actual amount of the tax is to be extended by the board of supervisors. So precisely, as we have just seen, it is in respect to corporations. The original capital stock is to be set down, and the tax is to be extended in the same manner. No one ever supposed that the prescribed mode and form of assessing an individual could deprive him of the exemptions antecedently declared in his favor. Why then should the same mode and form of proceeding in the case of a corporation have that effect? I am sure this argument rests upon no foundation. If it be said there is no authority in the *Page 218 
statutes for correcting the roll in this respect in favor of the taxpayer belonging to one class, it is equally true as to the other class. And by proving too much, the argument is demonstrated to be unsound.
Aside from all questions of exemption, it is not now very material to inquire whether before the act of 1857 the nominal instead of the real value of the capital or stock of a corporation was the standard, and the only standard of assessment.
On this point the statute quoted from the Laws of 1857, leaves no longer any doubt. The leading design of this act was to abrogate the practice of assessing corporations according to nominal values, and to introduce the principle, far more reasonable and just, of taking actual value as the standard. This design was accomplished by the use of language too plain to require comment. That such is the interpretation of the statute has already been determined by this court. (Dolloway v. TheOswego Starch Factory, 21 N.Y., 449.)
In applying the principle thus introduced, the assessor must of necessity have or acquire some knowledge of the actual property, funds and estate which corporations possess, as well as of the liabilities against them. These are the circumstances, and the only ones, which can determine the actual value of their capital or stock. If the shares held by individuals are a subject of sale in market, the sales no doubt are evidence of such actual value; and in the absence of other knowledge, the assessors may act upon that basis. But this evidence is often wholly wanting, because, in very many instances, sales of shares are nearly or quite unknown. Again, in instances still more numerous, evidence of this kind will be entirely fallacious. There is no property so liable to gambling and speculation, as stock in corporations. Its value is often unknown to the large body of the holders, because those having leading interests and concerned in the management conceal such value for their own private purposes. Stocks may be, and frequently are, inflated or depressed by those who wish to sell or to buy. They are subject, moreover, to all the vicissitudes of the money market. They go up or down in the fullness *Page 219 
of expectation and hope of to-day, or in the panic of to-morrow. Actual value is the result to be arrived at, for such are the words of the statute, and the inquiry, therefore, must have a primary regard to the property and estate, which alone impart such value. I have endeavored to show that without this statute of 1857, the argument for the respondents, which rests upon the idea that the sum of the capital subscribed and paid, or secured to be paid, is the sole standard of assessment, fails. But with this statute, which is now a fundamental part of the system of taxation, the very foundation of that argument seems to be removed.
It remains to examine the distinctive theory, upon which the judges of the court below have proceeded in this case. They have conceded that the credit of the United States is universally exempt from taxation. They suggest no mode of assessing such property whether constituting part of the capital of an individual or a corporation. The only ground, therefore, upon which they have been able to sustain the action of the tax commissioners is, that taxation in respect to corporations is not upon their capital or estate, but upon their own stock, as a thing quite distinct from capital. According to this view, the relators have not been assessed in respect to their Government stocks or upon any other property, and have nothing to complain of. This conclusion seems to be derived from the use of the terms "capital stock," in the statutes which prescribe the manner of preparing the assessment rolls.
This theory only needs to be analyzed in order to demonstrate its illusory character. A just conception of the meaning of terms is the first requisite. The word "capital" is unambiguous. It signifies the actual estate, whether in money or property, which is owned by an individual or a corporation. In reference to a corporation, it is the aggregate of the sum subscribed and paid in, or secured to be paid in, by the shareholders, with the addition of all gains or profits realized in the use and investment of those sums, or, if losses have been incurred, then it is the residue after deducting such losses. The corporation as a legal person, is the owner or proprietor of *Page 220 
this capital, and there is not a corporation aggregate in the world which ever owned any else except the franchise of being a corporation. The term "stock" is, perhaps, sometimes used with less precision. It may occasionally be employed to denote the same thing as capital. If that were its meaning in the statutes, of course the argument of the Supreme Court in this case would not have even a verbal criticism to rest upon. But, whenever it means anything different from the capital of a corporation, it can refer to nothing else than the interests of the shareholders or individuals. Such interests are called "stock," and the sum total of them is appropriately enough called the "stock" of a corporation. Those interests are the resulting estates of private persons, which flow from the nature of corporate organizations. In some respects, they resemble a chose in action, and thus are so treated in the relation of husband and wife and in other relations. More accurately, I think, they may be called equitable estates, which entitle the holders to share in the income of the capital, which is legally vested in and managed by the corporate body. The material point now is, that corporations themselves never own what is sometimes called their own stock. They have the power and capacity to create and issue stock, but when created and issued it always belongs to the individual to whom it is issued, or to his assignee. In his hands it may or may not be subject to taxation, like other private property in the pleasure of the legislature. In this State such property is exempted by law, because the capital itself held by corporations is assessed and taxed. In saying that corporations never own their own stock, of course I mean that which has been subscribed and paid for or secured to be paid by the shareholders. The capacity which a corporation has within its charter of receiving subscriptions and payment for stock, and then issuing it to the individual who subscribes and pays is a species of valuable right. But this is not material, because the laws of assessment only speak of capital or stock, or capital stock which has been paid or secured; and stock in that condition can never, in the nature of things, be owned by a corporation. *Page 221 
The result of this upon taxation is plain. Property is taxed according to our laws, and the owners are assessed in respect to it. Corporations are not to be assessed in respect to their stock as something distinct from their capital, because in that sense they are not the owners of it. They contribute to the public burdens on the basis of their capital like the owners of private estates, and because they have nothing else which is the subject of taxation. The mode of ascertaining the value of such capital in the assessment rolls is indifferent to the question. The sum of the stock subscribed and paid, for or secured to be paid, may or may not be taken as the presumptive value. In whatever way the result is reached, the burden is imposed on the artificial person or body in respect to the capital or estate of which it is the proprietor, and it is not imposed on the intangible substance called "stock," which is parceled out to individual owners. That this is in accordance with all the principles and analogies of taxation known to our laws, it needs no argument to prove.
Plain as I think this conclusion is, the question is not exhausted without looking at the statutes under which it is supposed to arise. Let us refer to them, keeping in view the theory we are endeavoring to refute, which is, that stock — as meaning something wholly different from the capital or estate of a corporation — is the subject of taxation. The subjects of taxation and those which are exempt from it are precisely defined in the title which preceeds all others in the Code of assessment laws. (1 R.S., 387.) In the very first section it is provided, that "all lands and all personal estate within this State, whether owned by individuals or corporations, shall be liable to taxation," c. Can language more explicitly declare, that it is the capital or estate of corporations which the legislature intended, and not their stock in the sense now contended for? In the 4th section of the same title, the exemptions are specified, and among them (sub. 4) the houses, lands and personal estate of companies incorporated for the reformation of offenders, and (sub. 7), "the personal estate of every incorporated company not made liable to taxation on its capital in the 4th title *Page 222 
of this chapter." Now it is this 4th title which contains the provisions for making up assessment rolls against corporations in some of which the term "capital stock" is used. The reference to that title here quoted, and the use of the word "capital" in such reference, prove absolutely that the terms "capital," and "capital stock," are employed in precisely the same sense. Referring now again to the first title, we find a further provision (§ 7), excepting "the owner or holder of stock in any incorporated company liable to taxation on its capital." Here, again, the subject is clearly defined. Stock is not to be taxed but capital is; the one is marked as the property of the individual, the other as that of the corporation.
Passing the second and third titles which relate to the assessment and collection of taxes against individuals, and to subjects connected therewith, we come to the 4th, which relates to corporations. (1 R.S., 414.) In the very first section, we find it declared that corporations shall be liable to taxation on their capital in the manner hereinafter prescribed. The grounds for a verbal criticism, slight as they are, would not exist at all, but for the 6th section which, as we have seen, relates to the assessment rolls. But the very first requirement of that section is, that the assessors shall enter the names of corporations, and the "property" of each in the manner specified, and the first specification is the "capital stock paid in or secured to be paid in." Again, the 10th section of the same title declares that the "capital stock" shall be assessed, c., unless the corporation shall be entitled to commute its taxes, in which case no tax shall be imposed on the "property" of such corporation. Thus we find the word "capital," "capital stock," and "property," indiscriminately used throughout this title to designate the estate of a corporation. It may well be, that before the act of 1857 such estate was to be taken at its nominal value; that is to say, estimated at the amount of capital originally subscribed and paid or secured, without regard to depreciation and loss. This is indifferent, as we have shown. The point of the discussion now is, that the estate or capital at *Page 223 
whatever valuation, and not the stock in the sense of that term contended for, is the subject dealt with by the assessment laws. Indeed, we may take the very words on which the criticism arises, "capital stock paid or secured to be paid in." I affirm that these words are descriptive of nothing else than capital. The sums subscribed and paid in, or secured to be paid in, are the capital of a corporation in the real and actual sense. Stock, on the other hand, is paid for and is not "paid in." It is the thing which the subscriber receives in exchange for what he pays in. One of those values, that is the sum paid, is held by the corporation and becomes its capital. The other is given to the shareholder and becomes his stock. They are of totally different natures. The one is the object of taxation, the other is not. This appears to me so plain in reason, and upon the language of all the statutes referred to, that I pursue this point no further.
A single additional observation ought to be made upon the act of 1857. That statute besides introducing, as we have seen, the principle of actual value as the basis of taxation, has declared in express words an exemption of whatever is exempted by other laws, in addition to the exceptions which are made in the assessment rolls. This clause was intended, out of abundant caution, to remove all the differences which could be imagined or suggested between the rules of taxation, as to individuals, and those in respect to corporations. The language necessarily refers to all property which was exempt under preëxisting statutes. It cannot refer to the stock of the corporation, held "by the State or by literary and charitable institutions," because that exception is made in the assessment rolls. In addition to this exception, we have the words "or as shall have been exempted by law," referring certainly to all laws exempting property from taxation. In those laws we find embraced stocks of the Government of the United States; and the right to hold them free from taxation would seem more plain in favor of a corporation than an individual, because the privilege is declared twice, instead of once only. *Page 224 
The judgment should be reversed, and the proceedings re mitted, with a direction to correct the assessment roll.
DAVIES, J., did not hear the argument, and expressed no opinion.
Judgment affirmed.