MINER *v.* THE PRESIDENT AND TRUSTEES OF THE VILLAGE
OF FREDONIA.

The residence of an individual banker, doing business under the general
banking law is, for the purposes of the taxation of his banking capital,
in the town or ward specified as the location of his banking office, in
the certificate required by the statute.

The actual location of his banking office is to be assumed to have been men-
tioned in the certificate, and, consequently, to be the place of his resi-
dence for the purpose of taxation, where the certificate itself is not in
evidence.

APPEAL from the Supreme Court. The parties submitted
an agreed statement of facts under section 372 of the Code.
From this it appeared that the plaintiff was an individual
banker, who for several years previous to March 18, 1857,
had a banking office and carried on the business of banking
under the general law, at the village of Fredonia, where up to
that date he resided with his family. He then removed his
family and his personal residence to the village of Dunkirk,
distant about three miles from Fredonia, but continued his
banking office at the latter place, and came there daily for the
purpose of transacting his banking business. Shortly after-
wards he was assessed towards the payment of a tax for vil-
lage purposes in Fredonia, upon the sum of $64,000, the
amount of his banking capital, as appearing upon his reports
to the bank department. He paid the tax under protest and
an agreement that the question of his liability should be sub-
mitted to the Supreme Court.

The court, at general term in the 8th district, held, that the
assessment was valid, and gave judgment for the defendants.
The plaintiff appealed to this court.

*Chauncey Tucker*, for the appellant.

*Francis Kernan*, for the respondents.

DAVIES, J. No complaint is made of the principle of the assessment. It is not disputed that if the appellant was legally taxable by the respondents, in respect of his banking capital, the assessment and tax were made and levied upon a proper basis and just valuation. Neither is it claimed, in behalf of the respondents, that the appellant was taxable for his personal property generally, by the authorities of the village of Fredonia, for village purposes. At the time of the assessment, and from that time until the submission of this action, the appellant was an actual inhabitant of Dunkirk, another village in the immediate vicinity of Fredonia. Every person must be assessed in the town or ward where he resides when the assessment is made, for all personal estate owned by him, and this irrespective of its actual *situs* if it is within the State. (1 R. S., 5th ed., p. 908, § 5; *People* v. *Supervisors of Chenango County*, 1 Kern., 563; *People* v. *Commissioners of Taxes*, 23 N. Y., 224.) There is nothing in the act incorporating the village of Fredonia making any other or different test of liability to taxation for personalty than actual residence. Whenever a tax is voted, the assessors are required to make an assessment of all the property, real and personal, in the village, and when the assessment has been corrected as prescribed by the act, the trustees are directed to make out a rate bill or tax list, apportioning the sum to be raised upon the taxable inhabitants of the village in proportion to their several assessments. (Laws of 1829, p. 535, §§ 11, 12.) Reference is made to other statutes for the detail in the assessment and collection of taxes for village purposes. There is no indication of a purpose on the part of the legislature to subject citizens of the State, not inhabitants of the village, to taxation for personal property generally, being at the time for any reason within the bounds of the village. In such cases the maxim *mobilia personam sequuntur*, would apply, and by fiction of law the *situs* of the property would be the personal residence of the owner. This is essential to certainty of taxation and to prevent a conflict of jurisdiction between the different local boards of assessment and taxation in the State. The question then is, whether

Miner *v.* Village of Fredonia.

special legislation touching capital used by individual bankers for banking purposes, has given personal property and funds thus invested and used a *situs* for the purpose of taxation, distinct from the residence of the banker, when the business is carried on in a city, town or village other than that in which the banker resides. The assessment and taxation of individual bankers, as well as banking associations, in respect of their banking capital, are governed by special statutes applicable only to property thus employed, and not by the general statutes of the State regulating the assessment and taxation of personal property; and the business of banking, whether car· ried on by individuals or by associations, is subject to restrictions and regulations peculiar to itself, and which are not applicable to any other branch of business. So far as the rules and regulations prescribed for the government of banking associations can apply to individual bankers, they are made applicable by. statute, and both, so far as practicable, are subject to the same statutory regulations. Both are taxable for the full amount of actual capital paid in, or secured to be paid in, as such capital by them severally, at the market value of such securities, without any reduction for the debts of such individual banker or banking association. (Laws of 1847, ch. 419, § 4.) While the individual banker is in no sense a corporation having none of the incidents or powers of a corporation, his business is by law put upon the same footing in the main as that of banking associations incorporated under the general banking law, and the capital set apart by him for banking purposes is treated the same as if it constituted capital stock to the same amount in an incorporated banking association. In a sense, the bank, the banking business and banking capital of an individual banker is required to have, and is regarded as having, a local habitation, so to speak, a fixed *situs*, such as is nowhere given to personal property generally, or to individual business of any other nature; and this locality is of the same character as that which is given by law to a banking association and its business and capital. The deposit of securities with the superintendent of the banking depart·

ment by each, is subject to the same general regulations, and the minimum amount of the deposit by each is fixed. (2 R. S., 5th ed., p. 552.) Individual bankers, as well as banking associations, are required to make report of the names of those interested in the business, and also to file a certificate of his residence, which must also be his place of business, and of any change of residence. (Id., p. 553, §§ 158–161; p. 559, §§ 187, 188; p. 563, § 207.) Both are required to make the same annual report and are subject to the same visitation. (Id., p. 561, § 200, *et seq.*; p. 564, §§ 213, 214.) Both are subject to the same restrictions and penalties in respect of the issue of bills or notes and other matters touching their business and its relinquishment. (Id., 554, § 163; p. 563, § 200; p. 565, § 216 *et seq.*) Individual bankers, as well as banking associations, are made "banks of discount and deposit" (Id., p. 564, § 210), and are required to keep offices for redemption in New York or Albany (id., p. 570, § 233), &c., &c.

It will be seen upon an examination of the several statutes, that the legislature have regulated banking as a business, distinguishable and distinct from every other business, and have regarded individual bankers and banking associations, with their respective banking capital, in the same light, and placed all upon the same footing. A banking association has a *situs*, and is an inhabitant of the city, town or ward in which its office of discount and deposit is located, irrespective of the residence of the associates, and is taxable in that place. The policy of the law would apply the same rule to the banks of individual bankers, and make them local and subject to local assessment and taxation, irrespective of the residence of the banker or his associates. The statutes do, as we have seen, take from the banking capital much of its movable character, and discriminate it from the person of the owner. It is, so far as the public is concerned, entirely separated and distinguished from the other property of the same individual, and a new character given to it. The third section of chapter 281 of the laws of 1844, and section five of chapter 242 of the laws of 1854 (2 R. S., 5th ed., 553), require every individual banker

to file with the superintendent of the banking department, a certificate, stating the town, city or village in which he resides, and a like certificate in case of any change of residence, under a penalty of one thousand dollars, and declares it unlawful for such individual bankers to transact business under the banking act in any other place than that in which he resides. It is not stated, and cannot be assumed, that the appellant is doing business against law, and incurring a penalty for a violation of the law. It is agreed that he had, for more than seven years, had a bank of discount, deposit and circulation in the village of Fredonia, at and by means of which, he carried on his business as an individual banker, and that from the time of the commencement of his business up to within a few days or weeks of the assessment complained of, that village had been the place of his individual residence. It will be presumed that the proper certificate of residence was filed as required by law, and that the business of the appellant was entirely lawful; for it is expressly admitted to have been in pursuance of the general banking laws of the State. It is not claimed that any certificate of a change of residence has been filed, and the banking office or business has not been removed, and the plaintiff, it seems to me, is estopped, *quoad* the public, from alleging that his residence is not in the same village in which he continues to carry on his banking business, and where it was from the first. His business cannot lawfully be transacted in any other place. That which he cannot do without violating a public statute, and which is expressly declared to be unlawful, he ought not to be heard to allege, in order to escape taxation. The defendants and their assessors were justified in assuming that he was lawfully transacting business as an individual banker, in Fredonia. In order to do that, he was necessarily a resident of the village, and taxable not only in respect of his banking capital, but of all his personal property, certainly for the former.

So far as appears from the agreed statement of facts, the pretended change of residence was entirely unknown or unsuspected by the village officers until after the actual levy of

the tax. No notice was given to the assessors or claim made to them that the appellant was not a taxable inhabitant of the village. A change of residence as a banker can only be evidenced by a certificate of the fact, or rather that is necessary to a complete change, and is a part of the evidence; and the place of business must change with the change of residence. The change of residence may have been commenced by the appellant, but it has not been completed; and until it is perfect, he is taxable as a banker in Fredonia, at least until his banking office is removed.

But upon a proper construction of the statute, and without a resort to the doctrine of estoppel, I am of opinion that the tax complained of was properly levied. An individual banker may have any number of associates, and such associates are general partners with him. (Laws, 1854, ch. 242, §§ 6, 7.) These partners are individually liable with the banker for all debts and obligations made or created by him in the business. Nevertheless, the public authorities deal with the individual banker as if he were the only person concerned in the business, and he is assessed for the banking capital as if he were the sole owner. Although he has not corporate powers, he has a representative capacity. The residence of the general partners does not control the place of business. That is fixed in reference to the residence of the person known as " the individual banker," that is, of the one who manages and in whose name the business is transacted, and with whom the public have to do. That residence is not a corporate residence which would be the recognized habitation for legal purposes of an ideal body, but is a *quasi* official or representative residence, the dwelling-place for legal and statutory purposes, not so much of the individual as the individual banker. A corporation is an inhabitant of the town or city in which its charter locates it or in which its principal place of business is. The statute looks to a similar location of the individual banker as such, and therefore the banker, when he locates his banking office, selects his residence as a banker in that place. His individual dwelling and that of his family, his lodging place and his eating place, and his

residence as an elector may be anywhere else; but as a banker, exercising to some extent a franchise and employing his capital and funds in the business of banking under the statutes of the State, his residence is with his banking office and in the place named in his certificate. The public want to know his residence as a banker, and that they learn from his certificate and from knowing where his place of business as such is. The legal residence of a banking corporation — an invisible, intangible thing — is at its banking office; the individual banker has the same residence. Section 3 of chapter 281 of the Laws of 1844, requires the individual banker to certify his residence, and confines him to that locality for the transaction of his business. To regard this as referring to the individual residence of the banker, rather than his business residence, would compel all the individual bankers of Wall street to reside in that vicinity, and would exclude all those living in the upper and healthier parts of the city from their business; and in every city every banker must reside in the same ward in which he would have his place of business. This would be unreasonable, if not impracticable, and cannot be supposed to have been intended by the legislature, and this absurdity will not result if the statute is read as having reference to the business residence of the individual. That nothing more is intended by the statuté than a business location, is evident from subsequent legislation.

Section 1 of chapter 340 of the laws of 1848 (2 R. S., 5th ed., 568, § 210), which declares all banking associations and individual banks under the provisions of the general banking law to be banks of discount, deposit and circulation, directs that the usual banking business of each "shall be transacted at the place where such banking association or individual banker shall be *located* agreeably to the location specified in the certificate directed to be made by law, &c." By the act of: 1857, ch. 189, § 7 (S. L., p. 438), an individual banker may transfer to his partner his stocks, securities and banking business and privileges, and, of necessity, by implication, the purchasing partner may continue the business in the same location.

Whatever may be his actual dwelling place, his business resi dence, his location as a banker is that of the bank which he has purchased.   So the business of an individual banker may descend or be bequeathed and the same statute in terms author- izes the business to be continued by the legatee or heirs at law without imposing actual residence in the town or ward as a condition.   They assume the business location by accepting the legacy or taking as next of kin or heir at law.   The busi- ness residence, the location of the appellant as a banker, being fixed by his certificate originally filed, or, if no certificate was filed, by his banking office or the place of his business, it fol- lows that all assessments and taxes against him, in respect of his banking capital, are properly made in the place thus fixed as his residence and could not properly be made elsewhere.

Upon this construction the law will be relieved of all doubt and uncertainty, and the duties of assessors and others charged with the levying of taxes, will be comparatively easy of execu- tion, while upon any other, there will be almost necessarily a conflict of jurisdiction between the assessing boards of different localities, and large amounts of very productive taxable pro· perty may wholly escape taxation, a thing not desirable at this time.

The judgment must be affirmed.

Denio, Ch. J., and Emott, J., dissented; Rosekrans, J., was for affirmance, not on the ground that the statute fixed the residence of the banker in Fredonia, but because, as he construed the Case, it was not shown that he resided elsewhere.

Judgment affirmed.