In the matter of the application of JABEZ H. METCALF, assessor of the village of Canandaigua, vs. HIRAM J. MESSENGER and THEODORE E. HART.

For the purposes of the taxation of his banking capital, the residence of an individual banker, doing business under the general banking law, is in the town or ward specified in the certificate required by the statute as the location of his banking office.

One assessor, alone, can not make an assessment. It must be the joint act of all, or a majority, of the assessors.

An assessment made by one assessor only is irregular and void, and no proceedings for the purpose of charging the owner of the property with a contempt for not paying the tax can be founded upon it.

Neither an associated bank nor the bank of an individual banker, necessarily continues its existence as a banking institution, and liability to taxation as such, during the period of six years after the redemption of ninety per cent of its circulating notes, provided by statute for closing its banking business; when it permanently and deliberately ceases to transact regular and accustomed banking business, with a view of calling in its circulating notes and of ultimately giving the notice provided by the first subdivision of section 1 of the act of 1859. (Chap. 236.)

When it thus ceases to act as a bank, it loses its character as such, and is no longer one, except in name.

Parties assessed will not be held concluded against alleging any irregularity in the assessment, by reason of their not appearing at a meeting of the assessors which it does not appear, and is not alleged, was ever held, or notice thereof given.

APPEAL, by Messenger and Hart, from an order made at a special term, imposing a fine upon the appellants, for their misconduct in refusing to pay a tax of $118.69, mentioned in the petition in this matter, presented to the special term, and upon which said order was founded. In that petition it was alleged that Jabez H. Metcalf, the petitioner, H. N. Jervis and W. P. Gunn were duly elected and qualified as assessors of the village of Canandaigua at the annual election of officers of said village, held on the first Monday of June, 1863. And that at said election, Archibald Hutchinson was duly elected collector of said village, and qualified as such. That the petitioner entered upon his official duties as assessor, immediately after said election. That while he

was in the discharge of his official duties as assessor, in assessing the property of corporations and individuals in said village of Canandaigua, there was in existence in said village an individual banking institution known under the name of "The Bank of Canandaigua," conducted and owned by Theodore E. Hart, of the said village, and Hiram J. Messenger ; the said Hart acting as banker, and the said Messenger acting as cashier, of said banking institution. That as such assessor, the petitioner assessed the said individual banking institution, by the name of "The Bank of Canandaigua," on its capital stock, in the sum of forty-five thousand dollars, that being the amount of capital stock of said banking institution, owned by said Hart and Messenger at the time said assessment was made. That said Theodore E. Hart or Hiram J. Messenger or any person or persons in their behalf did not, within the time required by law, make any application whatever to have such assessment in anywise changed. That after the expiration of the time given by law to parties to apply to said assessors to have assessments altered or amended, the assessment roll containing, among others, said assessment against the Bank of Canandaigua was placed in the hands of the clerk of said village of Canandaigua, who thereupon computed the amount of tax due upon the several assessments made upon property in said village of Canandaigua, and upon the assesssment made upon the capital stock of said Bank of Canandaigua, and who made out a tax list for said village for the year commencing June 1, 1863, and ending June 1, 1864. That the amount of tax so computed on said assessment of the capital stock of said individual banking institution was the sum of $118.49. That the trustees of said village thereupon annexed to said tax list their warrant for the collection of said tax, and said tax list, together with said warrant, were placed in the hands of the aforesaid collector of the village, for collection, who proceeded to collect the tax therein authorized and commanded to be collected in the manner provided by

Matter of Metcalf *v.* Messenger.

law. That said individual banking institution known under the name and style of The Bank of Canandaigua was one known in law as that of a private banker, and was organized since the year 1854, and was in existence and operation when the aforesaid assessment was made. That on the 4th day of February, 1864, Archibald Hutchinson, said collector of the village of Canandaigua made to the petitioner a report in writing, which was annexed to the petition. [In this report the collector stated that the Bank of Canandaigua had, through its banker and cashier, refused to pay $118.49, the amount of tax levied on said assessment; that there were no goods or chattels in the possession of said bank upon which said tax might be levied by distress and sale according to law; that he, the collector, had reason to believe, and did believe, that said bank had debts, credits, choses in action or other personal property not taxed elsewhere in this state, and upon which levy could not be made according to law.] The prayer of the petition was that the payment of said tax might be enforced in the manner provided by statute.

Upon this petition an order was made by a justice of this court, directing the said Hart and Messenger to show cause at a special term of the court why the court should not enforce the payment by them of the said tax levied against The Bank of Canandaigua, &c.

*T. R. Strong*, for the appellants.

*T. O. Perkins*, for the respondent.

*By the Court*, WELLES, J. At the time the assessment in question was made upon "The Bank of Canandaigua" such "bank," and every thing connected with it, was owned entirely by the appellant Messenger, and the appellant Hart, did not own the same, or have any interest therein. From 1857, to April 24, 1863, it had been owned by Hart & Messenger jointly, and on the last mentioned day the former sold

out all his interest to the latter, who, from that time ever since has continued the sole and exclusive owner thereof.

Section 9 of chapter 242 of the laws of 1854, does not apply to an absolute sale of the bank and banking operations, including the securities deposited with the bank department by an individual banker, so as to divest him of all interest therein. The object of that section was to prevent individual bankers, who had obtained circulating notes under the general banking laws, from selling or transferring the business of banking upon the securities deposited by such individual bankers. One of the evils intended to be prevented was the practice which had obtained to some extent of persons having deposited securities with the comptroller and obtained thereupon the amount of circulating notes duly countersigned, passing such notes into the hands of another, to be signed by such other person and put in circulation by him as money, and therewith to carry on the business of banking, by which the bill holders would lose the security of the direct personal liability of the individual who deposited the securities and obtained the circulating notes.

It seems to follow that the order appealed from, as it respects the appellant Hart, was erroneous.

Whatever there was of "The Bank of Canandaigua," at the time of this assessment, it was clearly personal property. If it then remained a bank, it was the bank of an individual banker, and not a corporation or corporate body. It was personal estate of Messenger, its owner. But Messenger was not in fact a resident of Canandaigua, but of the town of Cortland in the county of Cortland, and was, as he swears, taxed for his personal property in the town of Cortland.

An individual banker, under the general banking laws, is no more, as such, a corporation, either sole or aggregate, than a merchant, lawyer, physician or any other person. Any man may have a bank, and were if not for the restraining laws, might issue his own notes to circulate as money. The only substantial difference between them and individual bankers

under the general banking laws, is, that the latter may issue such circulating notes, upon certain conditions and under certain restrictions provided by law. If he dies, his interest in his bank and banking business goes to his executors or administrators as a portion of the personal assets of his estate.

The question then arises, whether Messenger, as owner of The Bank of Canandaigua, was liable to be taxed upon its capital, the same as if he had been an actual resident of the village of Canandaigua. In *Miner* v. *The President and Trustees of The Village of Fredonia*, (27 *N. Y. Rep.* 155,) it was held by the Court of Appeals, that the residence of an individual banker, doing business under the general banking law, is, for the purposes of the taxation of his banking capital, in the town or ward specified as the location of his banking office in the certificate required by the statute ; (*Laws of* 1844, *ch.* 281, § 3 ; 4 *N. Y. S. at Large, p.* 149 ;) and that such certificate not being in evidence, the actual location of his banking house is to be assumed to be that mentioned in the certificate. This settles the question of Messenger's liability, so far as his residence is concerned.

It is further objected on behalf of both the appellants that the assessment was irregular and void, for the reason that it was made by only one of the assessors. The petition shows that the assessment was made by Metcalf, one of the assessors, and does not show that either of the others took any part in it. I think we must adopt that view of the facts, namely, that the assessment was made by Metcalf alone. It was a material fact, and if the other assessors or either of them participated in it, it is to be presumed the fact would have been stated in the petition. In a proceeding to charge a party as for a contempt, no intendments of material facts should be indulged in.

One assessor can not make an assessment. It is the joint act of all or a majority of the assessors, (*People*, ex rel. *Mygatt*, v. *Supervisors of Chenango Co.*, 1 *Kern.* 563, 571, 572, and *authorities there cited.*) There seems to be no answer to

this objection, and we must hold that the assessment was irregular and void, and that no proceeding for the purpose of charging the appellants, or either of them, with a contempt for not paying the tax, can be founded upon it.

It appears from the affidavits read upon the motion at special term, in behalf of the appellants, that the institution known as The Bank of Canandaigua, at the time the assessment was made, had ceased to act as a bank. It had discontinued every species of business appertaining to a bank. It discounted no notes or drafts; neither bought or sold exchanges; received no deposits; in short, was doing nothing but to keep an office open for the purpose of redeeming its circulation as it was presented for that purpose—and this with the express purpose of ultimately closing up the unsettled affairs of the bank. It is therefore insisted by the counsel for the appellants that The Bank of Canandaigua was not in existence at the time of the assessment, for the purpose of taxation. In answer to this position, the respondents contend that the only way the bank could voluntarily terminate its existence so as to escape taxation was by pursuing the course provided by the act in relation to the bank department, passed April 11, 1859. (*Sess. Laws of* 1859, *ch.* 236, *p.* 503 *to* 505. 4 *N. Y. Stat. at Large, p.* 188, *&c.*)

By the first subdivision section 1 of this statute, the bank could take no step towards closing its business, until it had redeemed at least ninety *per cent* of its circulation. By the second subdivision of the same section, upon depositing with the superintendent of the bank department a sum equal to ten per cent or the balance of its circulating notes, after the redemption of the said ninety per cent, the superintendent is then to give notice that he will redeem, &c. and that the circulating notes must be presented for redemption within six years, &c. By the third subdivision the superintendent is to surrender to the banker, &c. all the money so deposited, remaining in his hands, deducting expenses. By subdivision four, all the circulating notes which are not

presented for payment within the six years shall cease to be a lien or charge upon the property and effects of the banker, and the banker is to be discharged, &c.

It sems to me that it can not be successfully maintained that either an associate bank, or the bank of an individual banker, necessarily continues its existence as a banking institution, and liability to taxation as such during the period of six years after the redemption of ninety per cent of its circulating notes provided by this statute for closing its banking business, when it permanently and deliberately ceases to transact regular, accustomed and appropriate banking business, with a view of calling in its circulating notes, and with an ultimate purpose of giving the notice provided by the first subdivision of section 1 of the last mentioned statute. When it thus ceases to act as a bank, it loses its character as such, and is no longer one, except in name. The statute last referred to, was designed, as I think, principally, if not entirely, to provide a method by which these institutions might be relieved at some time from liability to pay their circulating notes which are payable on demand, and which, except for some legislative provision on the subject, would be liable absolutely upon such notes for the period of six years after demand, which might not be made until a time so remote as to protract the period of liability during the longest life. In that view its provisions are reasonable, as only requiring the holders of bills to present them for payment within six years from the time the notice is published by the superintendent of the bank department, thus making the six years statute of limitations substantially applicable to these circulating notes, which, in consequence of their being made payable on demand, might remain in force indefinitely, while the bank was anxious, willing and able to pay them.

It is urged in answer to this position of the appellants that the objection comes too late, and that if they were dissatisfied with the assessment, their remedy was to appeal to the board of assessors when met in pursuance of the notice pre-

Matter of Metcalf *v.* Messenger.

scribed by the statute to hear complaints and revise their assessments. (2 *R. S. 5th ed.* 911, §§ 17, 18, 19.) But it does not appear any where in the papers that the assessors gave the notice or held the meeting for hearing complaints, &c. required by the statute; and it will not be presumed that such notice was given, or meeting held, in the absence of any allegation in the petition to that effect. If the notice and meeting were given and held, they were affirmative facts within the knowledge of the petitioner; and should have been stated in the petition. They are not to be presumed to have been in the knowledge of the appellants, or either of them, and it seems to me it would be unjust, under such circum- stances, to hold the appellants concluded against alleging any irregularities in the assessment by reason of their not appear- ing at a meeting of the assessors which it does not appear, and is not alleged, was ever held—or notice of which was ever given.

The assessment in question was upon the circulation of the bank at $45,000. It was shown that when the assessment was made, the capital was reduced to $24,000. This was also irregular. The assessment, if any could be made, should have been on the capital, and not upon the circulation.

For the foregoing reason I think the order appealed from should be reversed.

Ordered accordingly.

[MONROE GENERAL TERM, December 5, 1864. *James C. Smith, E. Darwin Smith* and *Welles,* Justices.]