# 96 AUSTEN v. HUDSON RIVER TELEPHONE CO.

In the Matter of the Petition of David E. Austen, as Receiver of Taxes in the City of New York, Respondent, v. The Hudson River Telephone Company, Appellant.

*Personal taxation — domestic corporation — principal place of business named in articles of incorporation — change of residence — residence, for purposes of personal taxation, of a telephone company incorporated under chapter 265 of the Laws of 1848.*

When the statute under which a domestic corporation is organized does not fix its residence or require the location of its place of business or principal office to be stated in its articles of incorporation, a statement in such articles of a place at which its principal office shall be located is binding neither upon the corporation nor the taxing officers, for the purpose of fixing the place where the corporation shall be assessed for personal taxation under the statute (1 R. S. 389, § 6), but its residence is deemed to be where its principal place of business is actually situated.

When the residence of such a corporation is not fixed pursuant to statute, it may change its principal office or place of business from the place at which it was first established to any place within the State where it is actually engaged in carrying on its business pursuant to authority conferred by its charter or articles of incorporation.

The articles of incorporation of a telephone company organized in 1883 under the Telegraph Companies Act of 1848 (Chap. 265), which act does not require articles of incorporation under it to state where the principal office of the corporation shall be located, stated that its principal office should be in the city of New York. The corporation constructed and operated lines within the counties, including Albany, mentioned in its articles, but never had a line or station in the city of New York. From the date of organization the office of the general manager and cashier was at the city of Albany, where the principal financial business of the corporation was transacted. From 1883 to May, 1890, the company maintained an office in the city of New York, where the stock book, stock ledger, corporate seal and the records of its secretary were kept and directors' meetings were held. In May, 1890, the New York office was abandoned, and on September 24, 1890, it was resolved at a stockholders' meeting that the office of the corporation be removed to the city of Albany, and on the same day all its books and property were removed to Albany, at which place the office of the company was thereafter kept. In 1891 the corporation was assessed by the taxing officers of the city of New York for personal taxation for that year. The law is to the effect that only persons and corporations who are residents of the city of New York on the second Monday of January in any given year are liable to be assessed there on their personalty for that calendar year;

*Held,* that the statement in the articles of incorporation did not fix the residence of the corporation in the city of New York;

That it appearing that the corporation had removed its office from the city of New York and ceased to transact any business therein prior to the second Monday of January, 1891, it was not a resident of that city and, consequently, not taxable therein.

APPEAL by the Hudson River Telephone Company from an order of the Supreme Court, made at the New York Special Term, and entered in the office of the clerk of the city and county of New York on the 6th day of June, 1893, imposing a fine for the nonpayment of a personal tax.

In April, 1883, the Hudson River Telephone Company was incorporated pursuant to chapter 265 of the Laws of 1848, and the acts amendatory thereof and supplementary thereto, for the purpose of constructing and operating telephone lines within certain counties in this state which are named in the articles of incorporation. It was stated in the articles filed April 26, 1883, in the office of the clerk of the city and county of New York, and April 27, 1883, in the office of the Secretary of State, that "the principal office of the association shall be in the city of New York, State of New York." The corporation constructed and is now operating lines within the counties mentioned in its articles (Albany being one of them), but it has never had in the city of New York a line or station for the reception or transmission of messages. From the date of the organization to the present time the office of its general manager and cashier has been kept at the city of Albany, at which office the principal financial business of the corporation has been transacted. From 1883 to May, 1890, the corporation maintained an office in the city of New York, where the stock book, stock ledger, corporate seal and the records of its secretary were kept, and at which office the meetings of the directors were held.

In May, 1890, the New York office was abandoned, and all of the property and books, except the stock book and secretary's minutes, were removed to Albany. September 24, 1890, at a meeting of the stockholders of the corporation, it was resolved that the office of the corporation be removed to the city of Albany, and on the same day all of its books and property were removed to Albany, at which place the office of the corporation has since been kept.

In 1891 the personal property of the corporation was valued by

the taxing officers of the city of New York at $200,000, and a tax of $3,372 for that year was assessed against the corporation on its personalty. The tax was not paid; a warrant was issued for its collection, which was returned (the date not appearing) unsatisfied, and in April, 1893, an order was granted requiring the corporation to show cause why it should not be fined for the non-payment of the tax; and, June 6, 1893, an order was granted (the corporation appearing and opposing) pursuant to section 857 of the Consolidation Act, fining it the amount of the tax, and $394.85, costs and disbursements of the proceedings. This appeal is taken from that order.

*Henry G. Atwater*, for the appellant.

*John G. H. Myers*, for the respondent.

FOLLETT, J.:

Between the first Monday of September and the second Monday of the following January the deputy tax commissioners are required to list in the city of New York real and personal property for taxation. (Consolidation Act, § 814.)

Only persons and corporations who are residents of the city on the second Monday of January in any given year are liable to be assessed on their personalty for that calendar year. (*Sisters of St. Francis* v. *Mayor, etc.*, 51 Hun, 355; affd., 112 N. Y. 677; *Matter of Babcock*, 115 id. 450.)

" All the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the town or ward where the principal office, or place for transacting the financial concerns of the company, shall be; or, if such company have no principal office or place for transacting its financial concerns, then in the town or ward where the operations of such company shall be carried on." (1 R. S. 389, § 6.)

The sole question is, was the corporation a resident of the city of New York on the second Monday of January, 1891 ?

The record does not show whether it had been taxed in previous years at Albany or New York, and no presumption arises under section 2 of chapter 392 of the Laws of 1883, that it resided in either city in 1891.

It is insisted in behalf of the city that the statement in the articles of incorporation, that "the principal office of the association shall be in the city of New York, State of New York," fixed the residence of the corporation in that city, and that its residence had not been changed prior to the second Monday of January, 1891.

When a statute under which a corporation is organized requires that it be stated in the articles of incorporation in what place the principal office for the management of its affairs is to be situated, and the location of its principal office is stated in the articles, the statement is conclusive evidence of the residence of the corporation for the purposes of taxation under the section of the Revised Statutes before quoted. (*Western Transportation Company* v. *Scheu*, 19 N. Y. 408; *The Oswego Starch Factory* v. *Dolloway*, 21 id. 449; *Miner* v. *Village of Fredonia*, 27 id. 155; *Matter of Metcalf* v. *Messinger*, 46 Barb. 325; *Chesebrough Mfg. Co.* v. *Coleman*, 44 Hun, 545; *The Union Steamboat Company* v. *City of Buffalo*, 82 N. Y. 351.)

The statute (Chap. 265, Laws 1848, repealed by chap. 566, Laws 1890) under which the appellant was incorporated does not require that it shall be stated in the articles of incorporation where the principal office of a corporation organized under that act shall be kept or located, nor does it contain any provision on this subject. Because the statute does not require the location of the principal office of the corporation to be stated, it is urged in behalf of the appellant that the statement in its articles that its principal office shall be in the city of New York is surplusage, and that the decisions before cited do not control this case, and our attention is called to the following extract from the opinion in the case last cited:

"The general statute prescribing where corporations are to be taxed was framed to meet two classes of cases: *First*, those which had a principal office fixed by their certificate, in accordance with the mandate of their charter, or the general law under which they were organized; and, *second*, those which had no such principal office fixed by their certificate of incorporation, because their charter did not require it. The former was to be taxed in the locality of their principal office. The latter in the 'place for transacting the financial concerns of the company.' Thus all possibility of mistake or oversight was prevented. If the company had a principal office

fixed by its certificate that, and that only, was its residence for purposes of taxation. If it had no principal office so located by its certificate, then it was to be taxed where its financial concerns were transacted."

This corporation belongs to the second class mentioned in this quotation. If the statement in the articles is binding on the corporation, it is also binding on the taxing officers. The location of its principal office not having been fixed pursuant to any statute, it does not seem to us that the statement is binding on the taxing officers of other towns or cities, and that the appellant is taxable "where the operations of such company shall be carried on." We do not think that a corporation without statutory authority can, by a statement in its articles that its principal office shall be kept in some remote town, escape taxation in the town or ward where its business is carried on. In this connection the language used by Judge DENIO in *Oswego Starch Factory* v. *Dolloway* (21 N. Y. 454) seems quite pertinent:

"The Western Transportation Company, respecting which a question lately came before us, as to the place where it was to be taxed, was formed under a general act which provided for the incorporation of navigation companies. That species of business could not generally be carried on in a single local jurisdiction, and, hence, such a company could not be located in any city or town in the manner adopted in respect to manufacturing corporations, by requiring its certificate to state the place where its operations should be carried on. *If no statement of any locality had been required, the provisions of the Revised Statutes would have applied to the case, and the assessors would have been obliged to inquire where, in point of fact, its principal financial office had been established.*"

Had the sentence contained in Judge DENIO's opinion, which we have italicized, been necessary for the decision of that case, it would be decisive of the one at bar, and the same may be said of the language quoted from 82 N. Y. *supra.* While these decisions are not decisive of the question now presented, yet they are persuasive, and our views accord with those expressed in the two judgments last referred to.

When a statute under which a domestic corporation is organized does not fix its residence, or require that its place of business or of

its principal office shall be stated in its articles of association, its residence or domicile is deemed to be where its principal place of business is situated (*Conroe* v. *National Protection Ins. Co.,* 10 How. Pr. 403; *Hubbard* v. *National Protection Ins. Co.,* 11 id. 149; *Thorn* v. *Central Railroad Co.,* 2 Dutch. 121; Ang. & Ames Corp. § 107; Boone Corp. § 33; Dicey Dom. 7–110); and when the residence of such a corporation is not fixed pursuant to statute it may change its principal office or place of business from where it was first established to any place within the State wherein it is actually engaged in carrying on its business pursuant to authority conferred by its charter or by its articles of association.

There is no statute in this State forbidding a corporation authorized to carry on its business in several counties from removing its office or place of business from where it was first established to some other county in which it is authorized to transact business, unless the place where its principal office is to be kept is required to be stated in its articles of incorporation, and in some cases corporations which are required to fix their principal business office in their articles may remove their office to other places. In case a business corporation is organized under chapter 567 of the Laws of 1890, the location of its principal place of business must be stated in its articles; but it is provided by the 9th section of the act that such a corporation may change its principal office with the consent of its stockholders owning two-thirds of the capital stock.

We think, the evidence being uncontradicted, that this corporation had removed its office from the city of New York, and had ceased to transact any business therein prior to the second Monday of January, 1891; that it was not a resident of that city and not taxable therein.

The order should be reversed and the application denied, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Order reversed and application denied, with costs.