## SAMUEL R. PORTER *et al.*

*v.*

## THE ROCKFORD, ROCK ISLAND AND ST. LOUIS RAILROAD COMPANY.

1. TAXATION—*legislative power over, in general.* The right to tax, which, from necessity, is inherent in every government, with us is vested in the legislature, which possesses plenary power over the subject, except so far as it is restricted by the constitution of the State or that of the United States.

2. SAME—*constitutionality of the law of* 1872 *for taxing railroad corporations.* The third section of the consolidated revenue act of 1872, requiring that the capital stock of all companies and associations then or thereafter created under the laws of this State, shall be so valued by the State Board of Equalization as to ascertain and determine, respectively, the fair cash

36—76TH ILL.

value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association, being a general law, and uniform as to the class upon which it operates, is not in violation of any constitutional provision.

3. CONSTITUTIONAL LAW—*taxation of corporations.* Section 1, article 9, of the new constitution, does not require that the legislature, in providing for the taxation of corporations, to designate the precise amount which each corporation shall pay, and that this shall be the same on each corporation, without regard to the value of the franchise or the privileges enjoyed, nor that such taxation shall be of like character with that which may be imposed on inn-keepers, and others pursuing the particular vocations named.

4. This part of the constitution only requires that corporations shall be taxed in such manner as the General Assembly shall, from time to time, direct by *general law,* and the only uniformity required *is as to the class* upon which such general law shall operate. Its design was, to enable the legislature to make the burthen of taxation proportionate, by applying a different rule to corporations and the vocations named from that applied to individuals.

5. SAME—*mode of taxing corporations discretionary with the legislature.* It is therefore discretionary with the legislature to determine whether corporations shall be taxed only on their tangible property, on the amount of their capital stock paid in, on the amount of their gross receipts, or, as under the act of 1872, on the value of their tangible property and on the fair cash value of their capital stock, including their franchise, over and above the assessed value of their tangible property, subject merely to the limitation that it shall be directed by general law, uniform as to the class upon which it operates.

6. SAME—*assessment of property may be given to different officers.* There is no constitutional provision which either expressly or by necessary implication denies the legislature the power to commit the valuation of property for taxation to such person or persons as it, in its wisdom, may select. It is competent to require the State Board of Equalization to assess the value of a certain class of property, leaving other property to be assessed by the ordinary assessors.

7. SAME—*whether power given Board of Equalization is a delegation of legislative power.* The power given to the State Board of Equalization to "adopt such rules and principles for ascertaining the fair cash value of the capital stock of corporations as to it may seem equitable and just," is not a delegation of legislative power, and does not therefore render the act unconstitutional. No discretion is left to the board as to what shall be assessed or what degree of value shall be ascertained. Without such expression, the board would have this power by necessary implication from the power to assess.

76    561
190    22428
190    22429

76    561
e201    43
201    6 46

76    561
205    300
205    302

76    561
211    2 50
211    6 56

. 8. STATUTE—*rule of construction.* A statute should be so construed that the whole, if possible, shall stand, and when it can be so construed and applied as to avoid a conflict with the constitution, such construction must be adopted.

9. CORPORATIONS—*capital stock distinguished from shares of stock.* The legal property of the shareholder in a corporation is quite distinct from that of the corporation, although the shares of stock have no value save that which they derive from the corporate property and franchise; and a tax levied upon the property of the one is not, in any legal sense, levied upon the property of the other. A tax upon the capital stock and franchise of a corporation is not a tax upon the shares of the shareholders.

10. SAME—*distinction further explained.* The interest of a shareholder in a corporation entitles him to participate in the net profits of the corporation in the employment of its capital, during the existence of its charter, in proportion to the number of his shares, and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property belonging to him. But the capital stock and other property of the corporation is a distinct legal interest, and is taxable to the corporation itself.

11. SAME—*franchise is property.* A franchise of a corporation is property, and as such is liable to taxation, as well as the capital stock and tangible property of the corporation. The franchise may also be condemned for public use, under the right of eminent domain, upon due compensation being made.

12. The fact that it is difficult to fix a true value upon a franchise, and the danger of doing injustice in attempting to tax it, furnishes no objection to the right of the State to tax it, as no other species of property can escape taxation on account of the difficulty of ascertaining its value. Absolute accuracy in assessment of property is not essential to the validity of taxes based on it.

13. SAME—*capital stock is taxable but not shares.* Under the revenue act of 1872, the capital stock of corporations created under the laws of this State must be taxed, and the shares of stock are exempted from taxation; but when a resident of this State owns shares of stock in a corporation created by the laws of another State, they are taxable against him.

14. The words "capital stock," as used in the act of 1872, do not mean "shares of stock," either separately or in the aggregate, but are intended to designate the property of the corporation subject to taxation.

15. The fact that a railway company is required to furnish the Auditor a statement for the use of the State Board of Equalization, showing the amount of their capital, the amount paid in, its value, and the amount of its indebtedness, does not show that the legislature intended to tax the

shares of stock. This statement is intended to furnish a mode of measuring the value of the capital stock and franchise.

16. TAXATION—*corporation not taxable on debts owing by it.* A corporation is not taxable upon the value of the debts it owes, and to assess a corporation on the amount of its debts by the State Board of Equalization would be a clear violation of law.

17. SAME—*evidence of assessment including debts of corporation.* It was urged, on bill to enjoin the collection of a tax, by a railway company, that the Board of Equalization had included in the assessment of its capital stock, including the franchise, debts which the company owed. The evidence of this was the resolution of the board, declaring that the market or fair cash value of the shares of capital stock, and the market or fair cash value of the debt, excluding indebtedness for current expenses, should be added together, and the aggregate should be taken as the value of the capital stock, including the franchise: *Held,* that it could not be presumed, from the resolution, that the company was assessed with the amount of its debts, but that it would be regarded as adopting a mode by which to approximate the value of the capital stock, including the franchise.

18. SAME—*courts can not relieve against excessive valuation.* The courts have no power to grant relief against the collection of a tax on the ground that the officers appointed by law to assess erred in the valuation of property. In fixing the value of property for taxation, the assessors or Board of Equalization act judicially, and their decision can only be impeached for fraud.

19. SAME—*assessment by recommendation of a committee.* It was objected to an assessment of the property of a railway company, that the valuation was determined by a committee of the State Board of Equalization; but it was *held,* that as the report of the committee was acted upon and adopted by the board, it was to be regarded as having been made by the board.

20. SAME—*no notice of assessment required.* It is not required that a corporation, whose property is assessed for taxation by the State Board of Equalization, shall be notified of the assessment or the rules adopted whereby to determine the value of the property, and no right of appeal is given from the assessment.

21. SAME—*excessive levy may be enjoined.* Where the State tax is limited to a given sum, a levy upon property in excess of the proportionate amount necessary to be levied on it to produce the given sum, such excess is unauthorized by law, and its collection will be enjoined.

22. INJUNCTION—*of the collection of a tax.* A court of equity will not entertain a bill to restrain the collection of a tax, except in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, or where the property has been fraudulently assessed

at too high a rate. In no event will an injunction lie, unless it is clearly made to appear that the party has been wrongfully assessed, and will sustain irreparable injury unless the collection of the tax be enjoined.

APPEAL from the Circuit Court of Rock Island county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

This was a bill in chancery, by the appellee against John V. Cook, county clerk, and Samuel R. Porter, collector of Rock Island, to enjoin the collection of a tax. The opinion of the court states all the material facts of the case. The tax sought to be enjoined was assessed and levied under the consolidated revenue act of 1872.

Messrs. KENWORTHY & BEARDSLEY, and Mr. WILLIAM H. GEST, for the appellants.

Mr. CHARLES M. OSBORN, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

A number of cases have been submitted at the present term for our decision, in which substantially the same questions arise as in the present case. Inasmuch as the opinion in this case must be conclusive in those, we have, in considering the various questions involved, examined all the arguments filed by the distinguished and eminent counsel engaged in the several cases, with all the care and deliberation we could bestow, in view of the limited time within our control.

The bill filed by the appellee alleges that the Board of Equalization assessed against it, for the purpose of taxation for the year 1873, its property denominated "railroad track" and "rolling stock," at the sum of $2,146,932, and its capital stock at the sum of $1,004,480, upon all which taxes are levied, the collection of which is sought to be enforced against appellee.

The present suit relates only to so much of these taxes as is claimed to be due in Rock Island county.

The first objection urged is, that appellee owns no property upon which it can be held liable for the payment of taxes, which is described by the words "capital stock," because, it is insisted, its capital stock has been sold to, and was, at the date of this assessment, the property of the shareholders and not of the corporation.

The legal property of the shareholder is quite distinct from that of the corporation, although the shares of stock have no value save that which they derive from the corporate property and franchise, and a tax levied upon the property of the one is not, in a legal sense, levied upon the property of the other. In *Van Allen* v. *The Assessors,* 3 Wallace, 583, Mr. Justice NELSON, in delivering the opinion of the court, said : "The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal ; and, within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. This is familiar law, and will be found in every work that may be opened on the subject of corporations. A striking exemplification may be seen in the case of *The Queen* v. *Arnaud.* The question related to the registry of a ship owned by a corporation. Lord DENMAN observed : 'It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested, in one sense, in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease, but in no legal sense are the individual members the owners.'

"The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares, and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation, after the payment of its debts. This is a

distinct, independent interest or property, held by the shareholder like any other property that may belong to him."

"There can be no question," says Redfield, in his work on Railways, (vol. 2, 3d ed. 453,) "that the capital stock of corporations, or their property, both real and personal, is taxable to the corporation itself."

After quoting from the opinion of Mr. Justice Wayne, in *Gordon* v. *The Appeal Tax Court*, 3 Howard, 133, he adds : "We here find the clear recognition of three kinds of corporate property taxable to the corporation, and the shares in the hands of the corporators distinctly defined as a fourth species of corporate property, which is taxable only to the owners or holders : 1. The capital stock. 2. The corporate property. 3. The franchise of the corporation—all of which is taxable to the corporation ; and the shares in the capital stock, which is taxable only to the shareholders." And again, at page 460, sec. 2, he says: "The interest or right of a shareholder in a corporation is well defined by SHAW, C. J.: 'The right is, strictly speaking, the right to participate, in a certain proportion, in the immunities and benefits of the corporation.' This is a right or property as distinct from the capital stock of the company, or property of the company, as a debt is distinct from the debtor, or the mortgage debt from the mortgaged premises." The distinction, as thus stated, between "capital stock," which is liable to taxation against the corporation, and "shares of stock," which can only be taxed against the shareholders, is also fully recognized in *Oswego Starch Factory* v. *Dolloway*, 21 N. Y. 449 ; *The People* v. *Com'r of Taxes*, 23 id. 217–18 ; *Minot* v. *The P. W. and B. R. R. Co. et al.* (Supreme Court U. S.) 18 Wallace, 205. See also *People* v. *Bradley*, 39 Ill. 144 ; *Bank of Republic* v. *County of Hamilton*, 21 id. 54.

We are satisfied, from a careful examination of the Revenue act, that the legislature did not, by the use therein of the words "capital stock," mean "shares of stock," either separately or in the aggregate, but that they intended to designate

thereby the property of the corporation. In the second clause of the first section, in declaring what shall be taxed, is included the "shares of stock of incorporated companies and associations;" and the fourth clause includes "the capital stock of all companies and associations now or hereafter created under the laws of this State."

The third section prescribes the mode of valuation, and in the fourth clause it is required that "the capital stock of all companies and associations now or hereafter created under the laws of this State, shall be so valued by the State Board of Equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association." And the section concludes with the proviso, that "in all cases where the tangible property or capital stock of any company or association is assessed under the act, the shares of capital stock of any such company or association shall not be assessed or taxed in this State." Section six requires every person to "list his shares of stock, of joint stock or other companies (when the capital stock of such company is not assessed in this State)," and that "the property of a body politic or corporate shall be listed by the president or proper agent or officer thereof."

By the 29th clause of the 25th section, it is made the duty of the person whose property is being assessed to state, in the schedule, to be by him delivered to the assessor, "the amount and value of shares of capital stock of companies and associations not incorporated by the laws of this State." The capital stock or property of national banks is not to be assessed or taxed, but by the 35th section it is provided that "the stock holders in every bank located within this State, whether such bank has been organized under the banking laws of this State or of the United States, shall be assessed and taxed on the value of their shares of stock therein," etc.

By the 40th section, "every person, company or corporation owning, operating or constructing a railroad in this State,

shall return sworn lists or schedules of the taxable property of such railroad," as is thereinafter provided.

The 48th section requires that, "at the same time the lists or schedules are required to be returned to the county clerks, the person, company or corporation running, operating or constructing any railroad in this State, shall return to the Auditor of Public Accounts sworn statements or schedules, as follows:

*First.* Of the property denominated railroad track, giving the length of the main and side or second tracks and turn outs, and showing the proportions in each county, and the total in the State.

*Second.* The rolling stock, giving the length of the main track in each county, the total in this State, and the entire length of the road.

*Third.* Showing the number of ties in track per mile, the weight of iron or steel per yard, used in the main and side tracks; what joints or chairs are used in track, the ballasting of the road, whether graveled or dirt, the number and quality of buildings or other structures on "railroad track," the length of time iron in track has been used, and the length of time the road has been built.

*Fourth.* A statement or schedule showing: 1. The amount of capital stock authorized, and the number of shares into which such capital stock is divided. 2. The amount of capital stock paid up. 3. The market value, or if no market value, then the actual value of the shares of stock. 4. The total amount of all indebtedness, except for current expenses for operating the road. 5. The total listed valuation of all its tangible property in this State. Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the Auditor of Public Accounts."

The 50th section makes it the duty of the Auditor, annually, on the meeting of the State Board of Equalization, to lay such schedules before the board, and requires the board to assess the property, as in the act is afterwards provided.

The 108th section provides that "the State Board of Equalization shall assess the capital stock of each company or association respectively, now or hereafter incorporated under the laws of this State, in the manner hereinbefore in this act provided."

The 109th section requires the State Board of Equalization to assess the railroad property denominated in the act "railroad track" and "rolling stock," and directs how the assessment shall be certified and distributed.

The 110th section is as follows: "The aggregate amount of capital stock of railroad or telegraph companies, assessed by said board, shall be distributed proportionately by said board to the several counties in like manner that the property of railroads denominated "railroad track" is distributed. The amount so determined shall be certified by the Auditor to the county clerks of the proper counties. The county clerk shall, in like manner, distribute the value, so certified to him by the Auditor, to the county, and to the several towns. districts, villages and cities in his county entitled to a proportionate value of such capital stock. And said clerk shall extend taxes against such values, the same as against other property in such towns, districts, villages and cities."

It is thus seen that the property directed to be taxed is described as the property of the corporation, and where it is designed that the property of share holders shall be taxed, it is correctly described as "shares of stock," or "shares of capital stock," and we have been unable to find a single instance in which the words "capital stock," as used in the act, are not used to convey a meaning other and different from that conveyed by the words "shares of stock," or "shares of capital stock."

It is contended, however, that nothwithstanding the professed exemption of shares from assessment where the capital stock is assessed, inasmuch as the shares of stock are required to be assessed by the local assessors before the capital stock can be assessed by the Board of Equalization, both must neces-

sarily be assessed. We can not concur in this construction.
The statute is imperative that "the capital stock" of all
companies and associations now or hereafter created under
the laws of this State, shall be taxed; the mode of valuation
is prescribed, and the language is equally imperative that
when the capital stock or franchise is assessed, the shares of
stock shall not be. When, therefore, the corporation is cre-
ated by the laws of this State, its capital stock must be taxed,
and the shares of stock are exempt, but when a resident of
this State owns shares of stock in a corporation created by
the laws of another State, his shares of stock therein must be
taxed. That such is the fair construction of the statute would
seem to be conclusive, both from the impossibility to other-
wise preserve and give force to all the words used, and the
fact that the shareholder is only required to list the shares of
stock of companies and associations not incorporated by the
laws of this State.

It is next argued that it clearly appears that the words
"capital stock," as used, were intended to describe the prop-
erty of the shareholders, because:

*First.* The shares of stock are exempt from taxation where
the capital stock or tangible property is taxed.

*Second.* The facts required to be given in the schedule to
be returned by the corporation to the Auditor, and by him to
be laid before the Board of Equalization, tend to show the
value of the shares of stock, and do not tend to show the
value of the capital or property of the corporation.

Whether taxation shall be laid upon the property of the
corporation or upon the shares of stock, the ultimate effect
must be the same to the shareholder, for, practically, taxation
upon everything, tangible and intangible, belonging to the
corporation, is upon the same actual values which the aggre-
gate shares represent. It is not necessary to assert that the
legislature is prohibited from taxing both the corporation and
the shareholders; it is sufficient that it is competent for the
legislature to exempt shares of stock from taxation where all

the values they represent are taxed in the hands of the corporation, and that such exemption is commended by principles of justice and equality.

But it is obvious that the mode of valuation enjoined can not be applied to ascertain the value of that which belongs to the shareholder, as such. When the shares are assessed, all the interest that the shareholders have in the franchise or property of the corporation is included. The franchise and tangible property belong, unquestionably, to the corporation, and if liable to be taxed, must be assessed for that purpose against it. If to the value of the shares of stock be added the value of the franchise, the franchise will be twice assessed. This we can not presume the legislature intended should be done.

In determining, however, the value of the capital or property of the corporation, including the franchise, the value of the aggregate shares of stock representing, as they do, all the actual values belonging to the corporation, might be regarded as a mode of measuring their value, and from such valuation the tangible property should be deducted, to avoid double assessment. It is not, as we conceive, unreasonable to assume that the debts owed by the corporation proportionally reduced the actual value of the shares of stock, for the amount thus consumed would otherwise, as in the payment of taxes, ultimately belong to the shareholders. For the purpose, then, of determining how far the value of the shares of stock fails to fully represent the entire value of the corporate property and franchise, it would be necessary to ascertain the amount and value of the corporate indebtedness. In this view, we think, all the information required to be furnished by the schedule might subserve an important purpose in ascertaining the value of the corporate property, including the franchise; and this mode of valuation, at least, seems to be plausible. Any other construction would lead to such absurdities and contradictions in the act as would necessarily prevent its practical execution. The rule of construction by which we must

be governed in such cases is, to so construe the statute that the whole shall, if possible, stand.   Potter's Dwarris on Statutes, 189.   And whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution and give it the force of law, such construction must be adopted.   *Newland* v. *Marsh,* 19 Ill. 384.

This brings us to the question, was it competent for the legislature, under the constitution, to require the "capital stock," as thus construed, including the franchise, to be assessed for the purpose of taxation?

No question is raised as to the right to tax the tangible property of the corporation, when it is properly assessed, so that, like other property, it shall be taxed in proportion to its value.   But it is contended that the intangible values required to be assessed, under the construction we have given to the revenue act, can not be made the basis of taxation.

That the right to tax rests upon necessity, is inherent in every government, and, with us, is vested in the legislative department, which possesses plenary power over the subject, except so for as it may be restricted by the constitution of the State or of the United States, and that it rests with those who allege the unconstitutionality of an act of the legislature to show, clearly and palpably, wherein it violates the constitution, are fundamental principles that can not be controverted.   *Sawyer* v. *The City of Alton,* 3 Scam. 130; *People* v. *Worthington,* 21 Ill. 174; *People* v. *Salomon,* 51 ib. 49; *Mc Veigh* v. *Chicago,* 49 ib. 318; *McCulloch* v. *Maryland,* 4 Wheaton, 428; *Providence Bank* v. *Billings,* 4 Peters, 561; *People* v. *Mayor, etc.,* 4 Comstock, 425.

It is clear, upon authority, that the franchise of a corporation is property, and as such, it may be a proper object of taxation.

"A corporation," says Chancellor KENT, " is a franchise possessed by one or more individuals who subsist as a body politic, under a special denomination, and are vested by the policy of the law with the capacity of perpetual succession,

and of acting in several respects, however numerous the association may be, as a single individual." 2 Comms. (8th Ed.) 295. It is said, in 2 Redfield on Railways, (3d Ed.) 452, "Corporations, like natural persons, are liable to taxation, both upon their property and income, and also upon their faculty. The faculty of a corporation is its organic life—its corporate existence, by which it is enabled to carry on business; that which it derives from its charter of incorporation, its corporate franchise."

In *West River Bridge Co.* v. *Dix et al.* 6 Howard, 529, the franchise of the corporation was held to be property, and, as such, liable to be condemned for public use under the right of eminent domain, upon due compensation being made. Mr. Justice DANIELS, who delivered the opinion of the court, said: " We are aware of nothing peculiar to a franchise which can class it higher, or render it more sacred than other property. A franchise is property, and nothing more.  *  *  * It is its character of property only which imparts to it its value, and alone authorizes in individuals a right of action for invasion or disturbance of its enjoyment."

In *Veazie Bank* v. *Fenno,* 8 Wallace, 547, Mr. Chief Justice CHASE said: "Franchises are property, often very valuable and productive property, and seem to be as properly objects of taxation as any other property."

In *Wilmington R. R. Co.* v. *Reid,* 13 Wallace, 264, the statute of North Carolina, incorporating the railroad company, contained this clause: "And the property of said company, and the shares therein, shall be exempt from any public charge or tax whatever." It was held that this exempted from taxation the franchise as well as the other property of the company. Mr. Justice DAVIS, in delivering the opinion of the court, used this language. "Nothing is better settled than that the franchise of a private corporation—which, in its application to a railroad, is the privilege of running it and taking fare and freight—is property, and of the most valuable kind. It is true it is not the same sort of property as the roll-

ing stock, road-bed and depot grounds, but it is equally with them covered by the general term ' the property of the company,' and therefore equally within the protection of the charter." Again, in a more recent case, in the same tribunal, (*State Tax v. Railway Gross Receipts*, 15 Wallace, 296.) the question under consideration was the constitutionality of a law of Pennsylvania, levying a tax on railroad companies, based on their gross receipts. Mr. Justice STRONG observed: "There is another view of this case to which brief reference may be made. It is not questioned that the States may tax the franchises of companies created by them, that the tax may be proportioned, either to the value of the franchise granted, or to the extent of its exercise; nor is it deniable that gross receipts may be a measure of proximate value, or, if not, at least of the extent of enjoyment."

In the *Monroe Savings Bank* v. *The City of Rochester*, 37 N. Y. 367, a statute of New York provided that, " The privileges and franchises granted by the legislature of this State to savings banks or institutions for savings are hereby declared to be personal property, and liable to taxation as such, in the town or ward where they are located, to an amount not exceeding the gross sum of their surplus earnings, and in the possession of said banks or institutions," etc. FULLERTON, J., who delivered the opinion of the court, in speaking of this provision said: "In declaring the privileges and franchises of a bank to be personal property, the legislature has adopted no novel principle of taxation. The powers and privileges which constitute the franchise of a corporation are in a just sense property and quite distinct and separate from the property which, by the use of such franchise, the corporation may acquire. They are so regarded by the law, and so regarded by common acceptation. And, although it has not heretofore been customary, in this State at least, to subject them to taxation, yet it must be conceded that it may be done if the legislature see fit so to enact."

It may be conceded that, owing to the peculiar nature of such property, there is more difficulty in ascertaining its value than that of many other kinds of property, and that there is, therefore, great danger of doing injustice in attempting thus to tax it, yet this can not be claimed to prove that the legislature is prohibited from imposing such taxation. Many of the undoubted powers of the legislature may be so exercised as to work injustice to persons and corporations, and still contravene no provision of the constitution. A law can not be held to be unconstitutional merely because its provisions are unjust. Cooley's Const. Lim. 72.

Although substantially the same language as is in sec. 1, art. 9, of the present constitution, requiring taxes to be levied on property by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, was in the constitutions of 1818 and 1848, it was never held or supposed that absolute accuracy in this respect was required, or that any species of property could escape taxation on account of the difficulty in ascertaining its real value.

Much property will, under any system, necessarily elude all taxation, while other, by reason of peculiar circumstances, will be compelled to sustain what practically amounts to double taxation.

Entire accuracy is difficult in valuing any kind of property; and, in many cases, even in valuing tangible property, it is morally impossible. Where property has no fixed market value, and, by reason of its location or peculiar condition, is in very slight or comparatively no demand, it is obviously impossible for the average mind to fix its actual, intrinsic value to a demonstration. The opinions of different men in regard to the value of such property are liable to vary quite as much as they do upon any other fanciful or theoretical question; and yet such property, no less than coin or currency, is required to be assessed and taxed in proportion to its value.

The utmost, therefore, that is practically attainable in any case is, that the property shall be assessed at its approximate value, as it may be determined by the judgments of those upon whom the law devolves the duty of valuing it, and this has always been held to be sufficient.

Notwithstanding franchises and credits are in their nature, in most respects, widely different, yet they are equally intangible and insusceptible of furnishing aids to determine their value by inspection, as is the case with tangible property, and the value of each depends upon a combination of circumstances, some of which may prove deceptive; still it has been the policy of this State for many years, to assess credits and tax them in proportion to their value. The constitutionality of such taxation was upheld in *The People* v. *Worthington*, 21 Ill. 172, in which case it was remarked by the then able and distinguished Chief Justice of this court: " The convention must have known that a requirement of the legislature to enumerate, as the subject of taxation, everything and every right and every claim which might properly be termed property, and to enforce from it a direct revenue in proportion to its actual, intrinsic value, could never be complied with, and the utmost that could have been intended was, it should approach as nearly to it as was practicable. To require it absolutely is Utopian, and not to be attained by mortals. The more, however, it is found practicable to subject all to this direct tax, the nearer is this constitutional requirement approached, and consequently *it is impossible to conceive of a constitutional objection, that it has embraced any species of property which it is practicable to assess by fixing a determinate value upon it.*"

That every corporation possesses a franchise of some value, can admit of no doubt. Even where it is created for the purpose of pursuing a business that may be lawfully pursued by any individual in the State, the privilege of the combination of capital by many persons, with the capacity to hold and manage it under one direction, in perpetual succession,

37—76TH ILL.

like a single individual, free from competition among those interested, and from change or disturbance by the changes of individual life, and without incurring any personal hazard or responsibility or exposing any other property than what belongs to the corporation in its legal capacity, must necessarily have a value beyond and distinct from the mere value of the money or property which the corporation is created to hold and use in its business. 2 Kent's Com. (8th Ed.) 296; *Cone* v. *Cary,* 98 Mass. 19.

We have never known it to be asserted that the value of a franchise is so indefinite and uncertain that it can not be made the measure of a recovery when it is wrongfully invaded, or that when it is taken and condemned for public use, it can not be ascertained what compensation shall be made to its owner. It is recognized in these respects as being capable of a definite valuation; and, in the case before us, it appears, by the allegations in the bill, that the franchise is mortgaged, in connection with the other property of the corporation, to secure the payment of its debts. If its value may be ascertained for these purposes, it may as readily be ascertained for the purpose of taxation.

But it is again insisted that, even conceding that it is competent for the legislature to provide that the franchise shall be taxed, its value should be determined by itself, as that of other property is determined, and not in connection with the value of other property, in the manner required by the act.

It is not perceived that this is enjoined by the constitution.

It is provided by sec. 1, art. 9, (Const. of 1870,) that "the General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property; such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise; but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission mer-

chants, showmen, jugglers, inn keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

It surely can not be doubted that the requirement that the Board of Equalization shall ascertain and determine the fair cash value of the capital stock, including the franchise, of all companies and associations now or hereafter created under the laws of this State, over and above the assessed value of the tangible property of such company or association, is a general law, or that it is uniform as to the class upon which it operates. It is not restricted to any particular part of the State, nor is it limited to a special tax; it extends to the entire State for the purpose of general taxation, and it applies the same rule to all within the class upon which it operates, namely: the corporations now or hereafter created under the laws of this State. It is not required, as seems to be thought by some of the counsel with whose arguments we have been favored, that the legislature shall, in providing for the taxation of corporations, under the last clause of the section referred to, designate the precise amount which the corporation shall pay, and that this shall be the same on each corporation without regard to the value of the franchise or privileges enjoyed, nor that such taxation shall be of like character with that which may be imposed on inn keepers and others pursuing the particular vocations named. It is only required that *they shall be taxed in such manner as the General Assembly shall from time to time direct by general law,* and the only *uniformity required is as to the class* upon which such general law shall operate. It is, therefore, left entirely to the legislature to determine whether corporations shall be taxed only on their tangible property, on the amount of their capital paid in, on the amount of their gross receipts, or, as in the present instance, on the value of their tangible property, and on the fair cash

value of their capital stock, including their franchises, over and above the assessed value of their tangible property, subject merely to the limitation that it shall be directed by general law, uniform as to the class upon which it operates.

Nor is the legislature restricted to the subjects and objects of taxation specified in section 1, for, by section 2 it is declared : "The specification of the subjects and objects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution." In the *Ill. Cen. R. R. Co.* v. *McLean Co.* 17 Ill. 291, it was said, that the whole design of the provisions to which we have referred, as they existed in the constitution of 1848, was to enable the legislature to make the burthen of taxation proportionate, by applying a different rule to corporations, and the particular vocations embraced in the last clause of section 1, from that applied to individuals, and the decision of the majority of the court in that case, sustaining the commutation of the taxes of the Illinois Central Railroad Company, is expressly declared to be based upon the power possessed by the legislature to apply a different rule to corporations from that applied to individuals in levying taxes.

It is again insisted that, if the capital stock, including the franchise, can be assessed against the corporation, as its property, it must be upon the basis of a valuation to be made by the same officers to whom the law confides the duty of assessing other persons and other kinds of property.

It is not claimed that there is any substantial difference between the present constitution and that of 1848 in this respect, but it is argued that there was no intention by the framers of the present constitution to change the system, and that therefore, when they used the words "some person or persons" to be elected or appointed for the purpose of valuation, they had reference to the same class of local assessors who have exercised that function from the organization of the State.

If by this it is intended to be asserted that corporate property has, from the organization of the State government, been assessed by the same class of local assessors who have assessed other property, and thereby invoke the aid of legislative construction in behalf of the objection urged, it is believed that a brief examination of some of the legislation upon the subject will show that the assertion is based upon a misapprehension, and that whatever inferences may be drawn from legislative construction must be in the opposite direction.

An act approved Feb. 12, 1849, authorized such counties as should, by a majority of the votes cast at a general election, express a desire so to do, to adopt the township organization, and contained provisions directing the election of the necessary officers, and prescribing their duties—among which were town assessors, whose duty it was to assess, for the purpose of taxation, the property within their respective towns.

In counties not adopting township organization, the county treasurer was, by the law then and long after in force, *ex officio* assessor of the county, and upon him was enjoined the duty of assessing, for the purpose of taxation, the property in his county.

By the 30th section of the act providing for the incorporation of railroad companies, and defining their powers and prescribing their duties, approved Nov. 4, 1849, it was declared: "The property belonging to any company organized under the provisions of this act, shall be listed by the resident secretary, or other proper officer, with the *Auditor of State*," etc.

The 22d section of the act incorporating the Illinois Central Railroad Company, approved February 10, 1851, after exempting the stock, property and effects of the company from taxation for the term of six years from the passage of the act, contains this language: "After the expiration of six years, the stock, property and assets belonging to said company shall be listed by the secretary, or other officer, *with the Auditor of State, and an annual tax for State purposes shall be*

*assessed by the Auditor* upon all the property and assets of every name, kind and description belonging to said corporation," etc.

An act for the assessment of property and the collection of taxes in counties adopting the township organization law, approved Feb. 12, 1853, requires, by the 22d section, that: "The president, secretary, or principal accounting officer of every railroad company, turnpike or plank-road company, insurance company, telegraph company, or other joint stock company, except corporations whose taxation is specifically provided for by law, shall list for taxation, at its actual value, its real and personal property," etc.; "that return shall be made *to the assessor of each of the respective counties* where such property may be," etc., "and if the assessor *to* whom returns are made is of opinion that false or incorrect valuations have been made," * * * he is thereby required "to proceed to have the same valued and assessed," etc.

An act approved Feb. 14, 1855, to amend the act last referred to, directs, in section 2, that "the return of the schedule or list of taxable property belonging to any railroad company or companies, required to be made by this act, shall be made to the county clerk, instead of the assessor, and the clerk shall *lay the same before the board of supervisors,* when they meet to equalize the assessment of property. If a majority of said board are satisfied that such return is correct, they shall assess it accordingly; but if they believe that such schedule or list does not contain a full and fair statement of the property of such company, subject to taxation in said county, made out and valued in accordance with the requirements of law, *said board* shall assess such property," etc. This mode of assessing the property of railroad companies remained in force, with some modifications unimportant to the question now before us, until the revenue act, in force July 1, 1872, became the law.

So far as we are now advised, no question was ever raised as to the constitutionality of these provisions of the statutes

referred to, but all the departments of the State government, without exception, acquiesced in their validity.

In *Bureau County* v. *C., etc., R. R. Co.* 44 Ill. 229, it was held that the act of 1861, allowing an appeal to be taken by railroad companies from the assessment of their property by the board of supervisors of a county to the circuit court, was constitutional; and this must have necessarily been upon the assumption that the board were, in the first instance, properly empowered to make the assessment.   And in the case of *People* v. *Salomon,* 46 Ill. 334, it was held that the act to amend the revenue laws, and establish a State Board of Equalization, approved March 8, 1867, was constitutional.

That decision is based upon the principle distinctly enunciated in the opinion, that no provision of the constitution, either expressly or by necessary implication, denies to the legislature power to commit the valuation of property for taxation to such person or persons as it may in its wisdom select.

It is thus seen that neither the previous enactments of the legislature, nor decisions of this court, can be appealed to in support of the objection urged.

It is unreasonable to suppose that, if the convention which framed the present constitution had designed that all assessments should thereafter be made by the same class of assessors, they would have adopted the precise phraseology of the constitution of 1848, relating to that subject, under which it was known that a different practice had obtained.

Whether property is assessed by local assessors or by the State Board of Equalization, it is, in the language of the constitution, "assessed by some person or persons" elected or appointed in the manner the General Assembly has directed, "and not otherwise."   No attempt is made by this clause of the constitution to limit the number of those who shall be elected or appointed for this purpose, or to prohibit their classification in accordance with the duties imposed, or in any manner to prescribe how the value of property shall be ascertained by them.   Admitting that the chief end had in view

was to secure uniformity in valuation, it would seem that the present system by which some property is assessed by local assessors, and other property is assessed by the Board of Equalization, would tend as much towards accomplishing that result as would a system by which all the property in the State should be assessed in the town in which it is located by the local assessor. Such officers are selected by popular favor, and it can not be presumed that they are better qualified for the discharge of their duties than are those who are selected in the same manner, as members of the Board of Equalization. That the intelligence and judgment of all local assessors in regard to property should be precisely equal, can not be expected; and in proportion as their numbers are increased, so is the probability of inequality in their valuations.

We can not believe that a Board of Equalization, having the assessed values of all other taxable property in the State before them, for the purpose of equalization, has less facility for fixing a fair, proportionate value upon corporate property than the local assessors have.

There is, moreover, an almost insuperable difficulty which must attend all attempts by local assessors to assess the capital stock, franchise, roadway and rolling stock of most railroad companies. Such roads are usually located through several counties. The cost of construction in a particular town or county affords no criterion of the value of that portion of the road, for every mile of the road is equally indispensable to its existence as a whole, and contributes, proportionally, to its principal earnings. Local improvements may, indeed, vary, and they are required to be assessed by the local assessors; but the road and its equipment constitute a single, entire property. In determining the value of such property, the question is neither one of original cost nor of the intrinsic value of the various items of which the road and its equipment are composed, taken separately, but what is it worth with all its capabilities and facilities as a railroad? The franchise extends to the entire corporate property, and it is not possible

that it can be divided. It must, if assessed at all, be assessed as an entirety, and this, as we have already shown, may be in connection with the property to which it is attached.

An additional objection urged upon this point is, that to require the stock or property of a corporation to be assessed by the Board of Equalization is in conflict with the 22d section of the legislative article of the constitution. This objection is, doubtless, urged inadvertently, as that section relates exclusively to "local" or "special laws," and it is not claimed that the revenue act belongs to that class.

By the 4th clause of the 4th section of the Revenue act, the Board of Equalization is authorized to "adopt such rules and principles for ascertaining the fair cash value of the capital stock of corporations, as to it may seem equitable and just; and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject, however, to such change, alteration or amendment as may be found, from time to time, to be necessary by said board," etc.

. This, it is argued, is the delegation of legislative power, and unauthorized by the constitution.

It can not be denied that, if such is its effect, the objection is well taken. But is it a delegation of legislative, or, indeed, of any other power not necessarily implied from the nature of the duty enjoined, and absolutely essential to its performance?

The board is directed to ascertain the fair cash value of the capital stock, including the franchise, over and above the assessed value of the tangible property. No discretion is left to the board as to what shall be assessed, or what degree of value shall be ascertained. It is merely empowered to adopt such rules and principles for ascertaining that value as to it shall seem equitable and just. The objection implies that valuations, to be constitutional, must be made without regard to any rules or principles. It would be very difficult to prove, it is believed, that the great principle of uniformity in valua-

tion, so earnestly and so properly insisted upon by the counsel, can be preserved without some rules or principles in valuation, even by local assessors. If each distinct valuation is made with reference to other valuations of the same or different kinds of property, it is made upon a rule or principle. If its value is fixed by its market value, or by what is supposed to be its actual value—if deductions are made, on account of imperfections or inferiority, from what the article would otherwise be deemed worth, there is a rule or principle by which the judgment is guided in determining the valuation. But the Board of Equalization is composed of the Auditor of State and one member elected from each of the congressional districts, and that they shall act at all, it is necessary that at least a majority shall agree. It must be apparent to every one that some rule or principle necessarily has to be adopted by which the aggregate judgment shall be ascertained.

We are unable to perceive that any power is, in this respect, conferred upon the board which it would not equally have possessed had the statute been silent upon the subject, or that the power given is more than is, by fair implication, conferred upon local assessors, and exercised by them in all cases where they make rational and just assessments of the property within their respective districts.

The bill refers to and makes an exhibit of a copy of the published proceedings of the Board of Equalization, by which it is shown that the board adopted and acted upon the following resolutions, for the purpose of determining the value of the capital stock and franchises of corporations:

"WHEREAS, the 4th clause of section 3 of an act for the assessment of property and for the levy and collection of taxes, approved March 13, 1872, and in force July 1, 1872, provides as follows: 'The capital stock of all companies now or hereafter created under the laws of this State shall be so valued by the State Board of Equalization, as to ascertain and determine respectively the fair cash value of such capital

stock, including the franchise, over and above the assessed value of the tangible property of such company or association. Said board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it may seem equitable and just, and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject, however, to such changes, alterations or amendments as may be found, from time to time, to be necessary by said board, provided that in all cases where the tangible property or capital stock of any such company or association is assessed under this act, the shares of capital stock of any such company or association shall not be assessed or taxed in this State. This clause shall not apply to the capital stock or shares of capital stock of banks organized under the general banking laws of this State;' therefore, be it

"*Resolved*, That, for the purpose of ascertaining the fair cash value of the capital stock, including the franchises, of all companies and associations now or hereafter created under the laws of this State, and for the assessment of the same or so much thereof as may be found to be in excess of the assessed or equalized value of the tangible property of such companies and associations respectively, we, the State Board of Equalization, hereby adopt the following rules and principles, viz:

"1st. The market or fair cash value of the shares of capital stock and the market or fair cash value of the debt, excluding such indebtedness for current expenses, shall be combined or added together, and the aggregate amount so ascertained shall be taken and held to be the fair cash value of the capital stock, including the franchises respectively of such companies and associations.

"2d. From the aggregate amount ascertained as aforesaid there shall be deducted the aggregate amount of the equalized or assessed valuation of all the tangible property respectively of such companies and associations, such equalized or

assessed valuation being taken in each case, as the same may be determined by the equalization or assessment of property by this board, and the amount remaining in each case. if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise, which this board is required by law to assess respectively against companies and corporations now or hereafter created under the laws of this State."

It is argued that, by adopting this mode of valuation, the board assessed the corporation upon the value of the debts which it owes, and which are not, in any sense, its property.

We are not to assume that this was done, as it is not enjoined by the revenue act, and would be in clear violation of the duty imposed on the board. It appears from the resolutions that the object was to assess the capital stock and franchises of corporations as is directed by the 4th clause of the 3d section of the Revenue act, and the assessment is, in fact, on the capital stock, including the franchise. The averment in the bill. in this respect, is contradicted by the exhibit.

There is a seeming injustice in taxing corporations which are largely indebted, and whose earnings are insufficient to pay the accruing interest, as is alleged to be the fact in the present case, to the full extent of the value of all their property and privileges, without regard to their indebtedness, yet it has never been the policy of the legislature to make any discrimination in favor of individuals on this account, and corporations can not claim an exemption from taxation when, under like circumstances, an individual would not also be exempt to the same extent.

The mode of valuation adopted by the Board of Equalization assumes: 1st. That the value of the aggregate shares of capital stock is equal to the value of all the property, including the franchise, belonging to the corporation, when it is not indebted. 2d. That when the corporation is indebted, the indebtedness proportionally reduces the value of the shares of capital stock. 3d. That the value of the debt is

determined by the value of that belonging to the corporation from which its payment can be enforced, so that however great the nominal amount of the debt, its actual value can never exceed that sum.

To illustrate : where a corporation is free from debt, and the aggregate value of its shares of stock is, say $150,000, it is assumed that the value of its capital stock, including its franchise, is $150,000. If the same corporation, still retaining the same property, is, however, indebted $50,000, this will reduce the aggregate value of its shares of stock to $100,-000 ; but, as the law does not exempt corporations or individuals from the payment of taxes on account of indebtedness, it would not be accurate to tax the corporation at this amount, because to do so would be to exempt it to the extent of its indebtedness. To ascertain, therefore, what would be the aggregate value of its shares of stock, if the corporation were free from debt, it is necessary to add the value of the debt to the value of the shares of stock. If the corporation is, in the given case, indebted $150,000, the shares of stock will be worth nothing, but the value of the debt will be $150,000, which is the value of that from which its payment can be enforced, and so, if the corporation is indebted in any greater sum, the value of the debt will still be only $150,000.

If these assumptions were entirely accurate, there could be no question as to the accuracy of the valuations determined by the board. But it is insisted that the market values of shares of stock are sometimes based upon artificial and fictitious valuations, produced by stock gambling and dishonest speculations. This may be conceded to be true, and still it will not follow that they, therefore, can not be valued for taxation, or that their market value may not be taken as a sufficiently accurate approximate value for that purpose. It has always been supposed that a fair test of the value of an article is what it will sell for, and we are unable to perceive how a more accurate test of value can be ascertained. The fact that the market value is fluctuating, makes such a test less accurate

than it would otherwise be, still it must, of necessity, be deemed a sufficient approximation of actual value for all practical purposes. So far as we are advised, it has never been questioned but that shares of stock may be assessed and taxed on the basis of their market values. It is difficult to conceive why, if this may be done, as against the shareholders, the aggregate market values of the shares of stock may not be assumed as an equally fair expression of all the taxable values, tangible and intangible, belonging to the corporation, since it is not claimed that the shares have any value independent of the interest they represent in the franchise and other property of the corporation. Live stock, grain, etc., may be assessed for taxation on a valuation based on their market values, yet it is as well known that such values are frequently affected by gambling speculations, as it is that shares of stock are thus affected. It is obvious that if no property can be assessed for taxation except where it has a permanent market value, based upon an infallible standard of actual intrinsic value, the sooner the present system for raising revenue is abandoned the better will it be for the State, for it is scarcely possible that any considerable part of the property in the State can be so valued.

It is also objected that other elements enter into the present value of debts, payable in the future, than the value of the property from which their payment can be made. There is, evidently, much more of truth in this, when applied to individuals, than to private corporations. The age, habits, prospect of longevity, business qualifications, etc., of the individual would, doubtless, to some extent, affect the value of his debt. But, in the case of a corporation, the corporate powers, capacity, and the length of time which its business may be prosecuted, etc., are defined by its charter—they are its franchise, and, as has been seen, its property.

We are unable to say that the conclusion, that the present value of the debts of a private corporation is determined by the value of its property, tangible and intangible, and that

such value may, therefore, be taken as the representative of an equal amount of property, tangible and intangible, is so unreasonable and extravagant as not to amount to a reasonably fair approximation.

We have been referred to the *Commonwealth* v. *Hamilton Manufacturing Co.* 12 Allen, 300, as an authority showing that the mode of valuation adopted by the Board of Equalization can not be sustained as an assessment upon the property of the corporation. A careful examination of that case, as well as a number of other cases decided by the same court. presenting like questions, fails to satisfy us that it sustains the objection urged, but we think, on the contrary, it may be regarded as an authority to sustain the action of the board. It will be observed that the word "assess," as used in our revenue act, applies to the listing and valuation of property for taxation, and has no reference to the rate of taxation imposed, after the valuation is made, while in the case referred to it is used in the sense of what we ordinarily express by the word "levy." It would seem too evident to justify argument, that to "assess property for taxation," and to "assess a tax upon property," describe different processes, both, however, relating to the same general subject. In the case referred to, BIGE-LOW, C. J., who delivered the opinion of the court, says: "It is too clear to admit of discussion, that, according to recent adjudications of this court, the assessment which is the subject of controversy in these actions must be supported, if sustained at all, as an exercise by the legislature of the authority conferred by that clause of the constitution  *  *  which gives the power of imposing reasonable duties and excises. *  *  The decisive reason why it can not be supported as a tax on property, in the sense in which that phrase is used in the constitution in the article cited is, that it is not proportional; that is, it is not laid according to any rule of proportion whatever, but is imposed only on the corporations designated in the act, without any reference to the amount required to be raised by taxation for public purposes, or to the actual

property held by such corporations subject to taxation, or to the whole amount of property in the commonwealth liable to be assessed for the public service."

In the present case the tax levied is the same on the property of all, without regard to its ownership, or whether it is tangible or intangible; and the intangible property of the corporation is only required to bear its proportional part of taxation, as determined by its value, in common with the other property of the corporation and the property of individuals.

In that case the method adopted to ascertain the value of the capital stock was substantially the same as that observed by the Board of Equalization in the present case, and it is thus vindicated by the Chief Justice at page 230: "It is the capital stock considered as a franchise, embracing the whole corporate organization, with all its rights and privileges, of which the shares are constituent fractional parts, that forms the subject matter on which the tax or assessment is imposed. Nor are we able to see any reason why the aggregate market value of all the shares of a corporation, representing as it does the estimate put, not merely on the property of the corporation, but also on the rights, privileges, capacities and present and prospective results of the corporate organization and business—in other words, on its franchise—is not a legitimate and just method of arriving at a basis on which to calculate an excise or tax. Inasmuch as the market value of the shares is generally a sure indication of the value of all that appertains or belongs to the corporation, corporeal and incorporeal, the aggregate market value of all the shares of stock affords a reasonable and equitable mode of measuring the value of the franchise. It certainly furnishes a more accurate standard than the capital of a corporation actually paid in, (*Portland Bank* v. *Apthorp,* 12 Mass. 252,) or than the amount of corporate business transacted during a specific period. *Commonwealth* v. *People's Five Cent Savings Bank, ubi supra.* A tax graduated by the amount of capital paid in

may operate unequally and inequitably, because the capital may be impaired by losses or greatly increased by profits. The amount of business done in a given period may not always furnish a true standard of the value of corporate privileges, because it may sometimes be carried on disadvantageously and without gain, and at other times with great success and profit.    But the market value of the shares, taken in the aggregate, at the time of assessing the tax would be likely to show, with approximate accuracy, the actual existing value of the rights, privileges and benefits conferred by the franchise."

We are unable to perceive how the facts that the rate per cent levied in the present case is different from what it was in that, and that here the same rate is levied on the capital stock, including the franchise, as assessed, that is levied on all other property, while there the levy was only on the capital stock of certain corporations, can change the accuracy of the mode of valuation.    It would seem to be pretty certain that if the valuation, when ascertained, was approximate in the one case, it would still be approximate if applied to the other.

It is further argued that, by this mode of assessing the capital stock, including the franchise, a different rule is adopted from that applied to other property.

The direction to the Board of Equalization is the same as that given to the local assessors.    It is, to assess all property which it is required to assess, at its fair cash value.    By the published proceedings of the Board of Equalization, which are brought before us by the bill, it appears that this was done, and when the property was so assessed, its value was equalized upon a basis of valuation applied to all the property in the State.    In these respects it does not appear that any difference was made between capital stock, including the franchise, and other property.    In determining the value of a particular kind of property, the assessor must necessarily seek information and exercise his judgment with reference to

38—76TH ILL.

the peculiar character of that property.   It hence must fol-
low that the process by which the judgment of value is
formed must vary in proportion to the dissimilarity of the
property assessed.   The value of a dollar in coin, for instance,
is determined by ascertaining that it is what it purports to be.
But no one would pretend that the value of all other property
can be thus determined.   We can not conceive that it ever
was contemplated, by the adoption of the clause in the con-
stitution requiring every person or corporation to pay a tax
"in proportion to the value of his, her, or its property," that,
however dissimilar the property may be in its nature, its value
must be determined by precisely the same process; and we
must suppose that, when the legislature enjoined the duty of
making this assessment, it was intended that the value of the
property to be assessed should be "ascertained and deter-
mined" by the Board of Equalization in that mode which to
the judgment of its members seemed best adapted to the pur-
pose.

The local assessor, in making valuations, declares results
only.   The process whereby his judgment is convinced is
unknown to the public, but the Board of Equalization, in
assessing the value of this particular class of property, has
gone further, and declared not merely the results of its judg-
ment, but the process also by which those results were pro-
duced.

If the objection urged can be sustained, it is not perceived
why every assessment of tangible property may not be assailed
upon like principle, where the information possessed, and the
reasoning thereon, by the local assessor, shall not be the same
with regard to each distinct item of property he assesses for
taxation.

The duty enjoined upon the board, was attended with many
and serious difficulties.   The valuation, as made, is, obviously,
not perfect.   But in the many able and ingenious arguments
which have been filed in the several cases where the question
is discussed, we fail to find any mode of valuation pointed

out which is less liable to objection. The most strenuous objection urged, is on account of taking the debts of the corporation into consideration; yet it seems to us as impossible, in determining the value of the capital stock, including the franchise, upon the basis of the value of the aggregate shares of stock, to make a fair approximation to accuracy, without taking the indebtedness of the corporation into consideration, as it would be to ascertain the price to be paid for property which is purchased subject to a mortgage, without taking the amount of the mortgage into consideration.

But it does not devolve upon us to justify the accuracy of the assessment, as made. In the view we have taken of the case, the Board of Equalization assessed the value of the capital stock, including the franchise, over and above the assessed value of the tangible property, and did not assess the shares of stock belonging to the shareholders, or debts of the corporation. The property assessed was the property of the corporation, upon which it was liable to be assessed for the payment of taxes. The constitution, as has been seen, requires that the value of property assessed for taxation shall be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise. The General Assembly has directed that the Board of Equalization and not the courts shall exercise this function. However much, therefore, we may think the board erred in its valuation, no power is given to us to arrest the collection of the tax, merely on that account. The board was fully empowered by law to make this particular assessment, and had jurisdiction over the property and the corporation for that purpose.

The law is well settled that assessors, in judging of the value of property, act judicially; and although they may err and assess it too high, this, of itself, will give a court of equity no jurisdiction to interfere and restrain the collection of the tax. In *Weaver* v. *Devendorf*, 3 Denio 119, BEARDSLEY, J., in delivering the opinion of the court, said: "In some

particulars the duty of assessors is undoubtedly ministerial; but, in fixing the value of taxable property, the power exercised is, in its nature, purely judicial.  *  *  *  *  *  The writ of *certiorari*, at common law, lies only to officers exercising judicial powers, and to remove proceedings of that character. (*The People* v. *The Mayor, etc.*, 2 Hill, 9–11. In the matter of *Mount Morris Square*, etc., id. 14, 21, 22.) Yet all the authorities agree that this writ lies to remove an assessment." To the same effect are also *Barlyte* v. *Shepherd*, 35 N. Y. 238; *Swift* v. *City of Poughkeepsie*, 37 id. 511; *B. and St. L. R. R. Co.* v. *Sup'rs Erie Co.* 48 id. 105. And the same doctrine was recognized by this court in *Spencer et al.* v. *The People*, 68 Ill. 510.

In *Cook County* v. *C. B. and Q. R. R. Co.* 35 Ill. 466, the previous decisions of this court relating to enjoining the collection of taxes were reviewed, and it was there announced as the settled law of the court, that a court of equity will never entertain a bill to restrain the collection of a tax, excepting in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation. To this exception should properly be added cases in which property has been fraudulently assessed at too high a rate. *City of Chicago* v. *Beatrice et al.* 24 Ill. 489; *Elliott* v. *Chicago*, 48 id. 294; *Town of Ottawa* v. *Walker et al.* 21 id. 608; *Metz* v. *Anderson*, 23 id. 467.

In no event will an injunction lie, unless it is clearly made to appear that the party has been wrongfully assessed, and will sustain irreparable injury unless the collection of the tax be enjoined.

Even from appellee's own showing it is difficult to conceive that this assessment does it injustice.

An exhibit filed with the bill is Schedule No. 4, being a copy of one filed by appellee with the Auditor, and by him laid before the Board of Equalization. It states the amount of appellee's capital stock, actually paid in, to be $6,490,579.41,

and that the amount of its debts, other than for current expenses, is $9,098,156.39.

The capital stock paid in is presumed to have been used in the corporate business, and this indebtedness could have been lawfully created for no other than corporate purposes. The two combined amount to $15,588,735.80. After making the most liberal deduction from this amount, on account of the depreciated value of its bonds when they were sold, for reckless management of the corporate business and property, and for loss and depreciation in the value of property, it would still seem almost incredible how the amount could, in the limited time this corporation has been in existence, be reduced far below the valuation assessed by the Board of Equalization, which was only, in the aggregate, $3,151,412. It would seem that $12,437,323.80 ought to cover the various items of depreciation and loss.

But, be this as it may, we are not convinced, from the allegations in the bill, taken in connection with the accompanying exhibits, that the valuation of appellee's property, as made by the Board of Equalization, is so unjust or oppressive, as to be sufficient evidence of fraud on the part of the board to justify us in restraining the collection of the tax imposed upon it.

It is also objected, that the valuations were first determined by a committee of the board, and not by the board. The assessment, as made, is the act of the board, and not of a committee. The report of the committee was acted upon by the board, and the fact that the mode of valuation adopted was the same as that recommended by the committee, no more impairs its validity than does the fact that a particular bill is recommended by a legislative committee, impair its validity when enacted into a law by the General Assembly. The report of the committee was suggestive only, and the members of the board can not be presumed to have been affected by it any further than it met the approval of their judgments.

Some further objections are urged, on the ground that the corporations were not notified of the meeting of the Board of Equalization, or of its intention to adopt the rule by which the assessments were made, and that no right of appeal was allowed.

The constitution does not provide that the legislature shall require that persons or corporations whose property shall be assessed for taxation shall be notified of the assessment, or the rules adopted whereby to determine the value of the property, or that there shall be allowed the right of appeal in such cases.

These matters address themselves purely to the discretion of the legislature.    The law, as it is made, is, in this respect, conclusive.

We are, for the reasons given, of the opinion that the circuit court erred in overruling the demurrer to the bill, and enjoining the collection of all the taxes levied on the capital stock, including the franchise, of the corporation.

But it is alleged in the bill, and admitted by the demurrer, that taxes have been levied upon the property of appellee in excess of the proportional amount necessary to be levied on it to produce the $3,500,000, levied for State purposes by the act in force May 1, 1873.   This excess, for the reasons given in *Ramsey* v. *Hœger, ante,* 432, is unauthorized by law, and its collection must be enjoined.

The decree of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*